GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY V.
MARY T. BROWN ET AL.

No. 992.   Decided June 6, 1901.

**Contributory Negligence—Locomotive Engineer—Violating Orders.**

A locomotive engineer, who had orders to meet three sections or trains
at a siding, went to sleep there, and, after the passage of the second section,
acting on the orders of the conductor, who believed it to be the third, moved
out his train, and was killed in a collision with the third section. Held, that
he was guilty of contributory negligence, as matter of law, preventing a recov-
ery for his death.   (Pp. 3-5.)

Error to the Court of Civil Appeals, Fourth District, in an appeal
from Bexar County.

Mary Brown and others sued the railway company and had judgment,
which was affirmed on appeal by defendant, who thereupon obtained writ
of error.

*Upson, Newton & Ward,* for plaintiff in error.—Under the undisputed
evidence in this case the said W. H. Brown, as a matter of law, was
guilty of contributory negligence, which contributed to or caused his
death.

Violation of rules of company, resulting in accident and injury, will
prevent recovery.  Bailey, Mast. and Servt., 88; Beach, Con. Neg., sec.
373; Wood, Mast. and Servt., sec. 399; Railway v. Thomas, 51 Miss.,
640; Railway v. Wallace, 76 Texas, 637; Pilkington v. Railway, 70
Texas, 229; Railway v. Gormley, 43 S. W. Rep., 878; Fritz v. Railway,
30 S. W. Rep., 85; Culpepper v. Railway, 90 Texas, 627; Railway v.
Ryan, 69 Texas, 665; Railway v. Kitchens, 83 Ga., 83; Railway v.
Craig, 80 Fed. Rep., 488; Russell v. Railway, 47 Fed. Rep., 204; Mason
v. Railway, 114 N. C., 718; Rittenhouse v. Railway, 26 S. E. Rep., 923;
Railway v. Rush (Miss.), 15 So. Rep., 133; Westcott v. Railway, 153
Mass., 460; Railway v. Reesman, 23 Law. Rep. Ann., 769; Railway v.
Mothershed, 20 So. Rep., 67.

When the danger is apparent the employe executes the orders of his
vice-principal at his peril.  Jones v. Railway, 31 S. W. Rep., 707.

The following cases were all reversed because the facts did not show

negligence on the part of defendant, or did show contributory negligence on the part of plaintiff: Railway v. Hester, 64 Texas, 403; Railway v. McCarthy, 64 Texas, 635; Railway v. Smith, 52 Texas, 186; Railway v. Bracken, 59 Texas, 74; Railway v. Richards, 59 Texas, 373; Railway v. Keith, 74 Texas, 290; Railway v. Ryon, 70 Texas, 61; Railway v. Faber, 77 Texas, 153; Murray v. Railway, 73 Texas, 7.

On the power and jurisdiction of this court and the Court of Civil Appeals on the facts: Douglass v. Railway, 90 Texas, 125; Choate v. Railway, 91 Texas, 409; Joske v. Irvine, 91 Texas, 574; Burgess v. Telegraph Co., 92 Texas, 128; Lee v. Railway, 89 Texas, 590; Warren v. City of Denison, 89 Texas, 561; Sanches v. Railway, 88 Texas, 119; Railway v. Sheider, 88 Texas, 165; Brush Electric L. and P. Co. v. LeFevre, 57 S. W. Rep., 640; Railway v. Hill, 71 Texas, 459; Lee v. Railway, 89 Texas, 583.

*H. C. Carter,* for defendants in error.

GAINES, CHIEF JUSTICE.—This action was brought by the widow, the children, and the father and mother of William H. Brown to recover damages for injuries resulting in his death, alleged to have been caused by the negligence of the servants of the defendant railroad company.

There was a verdict and judgment in the plaintiff's favor in the trial court, which judgment was affirmed upon appeal by the Court of Civil Appeals, one of the judges dissenting.

The deceased was the engineer upon a train of the defendant which was known as "No. 25," and which left San Antonio at about 12:45 a. m. on December 6, 1896. Upon reaching Luling the conductor of the train received a telegraphic order which made it his duty, under certain contingencies, to stop his train at Sandy Fork and to wait there until three sections of train "No. 24," known as 1-24, 2-24 and 3-24 had passed. Thompson, the engineer, received a copy of the same order. Sandy Fork was "a blind siding," by which is meant that there was no telegraph operator at that station. Train "No. 25" reached Sandy Fork and took the side track. Within about ten or fifteen minutes section 1-24 passed. The conductor and brakeman then went to sleep. About an hour and twenty minutes after train No. 25 had been placed upon the side track, the conductor was aroused by the noise of an approaching train and stepped out of his caboose and saw, as he testified, in the cupola of the passing train the number 3-24, which indicated that it was the third and last section. The train which he saw pass was in fact the second section, and there was testimony strongly tending to show that he was mistaken as to the number. But the jury having found against the defendant upon this issue, we must take it that he was correct. Thereupon the conductor signaled the engineer to move his train, but the signal not having been obeyed, he sent the brakeman forward to order the engineer to move out. The brakeman found the fireman asleep and the engineer as if he had just aroused from slumber. He

gave the order and the engineer moved the train upon the main track and proceeded upon his trip. In a short while the train collided with the third section of No. 24, and Brown, the engineer, was killed.

The rules of the company required that a train which was followed by another should carry, "displayed in the proper place provided for that purpose, on the front of the engine," "two green flags by day and two green lights by night" to denote that it was so followed; and also that upon passing another train, two blasts of the whistle should be blown in order to call attention to the signals. The signals were displayed on the second section as it passed Sandy Fork and the blasts were blown as required by the rules. There was evidence, however, tending to show that it was the custom of the standing train to give, under such circumstances, an answering signal, and that in case it failed to do so, it was the duty of those in charge of the passing train to stop and inquire as to the reason of the failure. There was also testimony showing that the answer to the signal was not blown and that the passing train did not stop. Rule 120 provided that "Conductors and enginemen will be held equally responsible for a violation of any of the rules governing the safety of their trains, and they must take every precaution for protection of their trains, even if not provided for by the rule." Rule 329 provides that "Enginemen and firemen must not at the same time absent themselves from the engine while on duty," which shows that by "enginemen" are meant the engineers. This is also shown by rule 516, which prescribes that "Enginemen will place their orders in the clip before them until executed." The orders referred to are written orders of which the conductors and engineers only receive copies.

It is insisted on behalf of the plaintiff in error that the facts show as a matter of law that the deceased was guilty of negligence which contributed to his death, and that therefore the defendants in error should not recover. We think this position well taken.

Negligence is the failure to discharge a duty. The deceased was advised of the coming of train No. 24 and received a special order not to move his train until the three sections had passed. It was his duty to obey this and to make diligent use of his senses in observing the passage of the several sections and to know that all had passed before proceeding with his own train upon the main track. This he did not do. The evidence points to the conclusion that he, as well as the others of the train crew, went to sleep. But whether he slept or not is unimportant. The siding was in close proximity to the main track, and the fact remains that if he had kept any kind of a lookout he would have known, when ordered by the conductor to move his train, that the third section had not passed and the accident would have been avoided. Upon the trial, much testimony was adduced upon the question whether or not it was the engineer's duty, under the circumstances, to move the train in obedience to the orders of the conductor. This is to lose sight of the main point in controversy. Back of that question is the further inquiry, whether or

not he was negligent in not knowing that the track was not clear and in failing to inform the conductor of that fact.

It may be that the general rules of a railroad company for the conduct of its employes are not absolute. Circumstances creating an emergency may exist which may excuse the servant for disregard of a rule. Hence the case would have to be clear in which the court should hold that the disobedience of a mere rule is negligence per se. But in this case, we have not only a general rule but a plain, specific order to do a particular act. The order was absolute and the duty was absolute. There was a failure to discharge the duty, and there being no controversy as to these facts, that failure was negligence as a matter of law. Knight v. Cooper, 36 W. Va., 232; Louisville & N. Ry. v. Woods, 105 Ala., 561; Cullen v. Metal Roofing Co., 114 N. Y., 45; Elliott v. Railway, 150 U. S., 245. If the deceased had kept watch, and, when ordered to move his train, had informed the conductor that only two sections had passed, then, in all human probability, the conductor would have rescinded the order. Had the latter still insisted upon his moving the train, then it would have been his duty to have refused to obey the order, or at least not to have moved his train without taking the precautions shown by the testimony to be customary in order to avoid the danger of a collision with the section which had not passed.

In our opinion, the trial court should have instructed a verdict for the defendant, and, having failed to do so, should have granted the motion for a new trial.

Therefore, the judgment of the District Court and that of the Court of Civil Appeals are reversed and the cause remanded.

*Reversed and remanded.*