## Missouri, Kansas & Texas Railway Company of Texas v. E. W. Bodie.

### Decided April 4, 1903.

**1.—Citation—Name of Railway Company.**

Where the citation in an action against a railway company gave the name of the defendant in full, it was not defective in failing to give it in full at each subsequent reference thereto.

**2.—Railroads—Rules of Company—Pleading and Charge.**

Allegations in the petition in an action for personal injury by a freight brakeman as to the duty of the engineer to give signals, held sufficient to warrant a charge on the subject.

**3.—Same—Charge—Negligence.**

A charge to find for the plaintiff brakeman if the jury found certain acts of negligence on the part of the engineer, was not on the weight of evidence in ignoring the duty of the brakeman to protect the rear end of his train by going back with a flag, where the charge was one presenting plaintiff's theory, and concluded with the statement that if plaintiff was exercising all care for his own safety, the verdict should be for him, unless, under the other issues, the jury should find for the defendant, and among the other issues there was a special charge on the question whether plaintiff had-been negligent in failing to protect the rear end of his train.

**4.—Same—Negligence Per Se—Violating Master's Rules.**

It is not negligence per se for a servant to violate the rules of the master; and a requested instruction that if plaintiff's acts, as specified therein, were a violation of the rules, the jury should find for defendant, was properly qualified by the statement that the jury should so find if they believed plaintiff's violation of the rules was negligence.

**5.—Same—Evidence—Printed Rules—Varying.**

Where the printed rules were in evidence stating how a certain flag signal should be given, but not under what circumstances it was to be given, evidence was admissible to show the construction placed on the rules, such construction having been pleaded.

**6.—Same—Verdict Excessive—Injury to Brakeman.**

A verdict for $16,000 in favor of a freight brakeman for an injury rendering one of his arms permanently lame is held excessive, and a remittitur of one-half the amount is required.

Appeal from the District Court of Hunt. Tried below before Hon. H. C. Connor.

*T. S. Miller* and *Perkins & Craddock,* for appellant.

*Carpenter & Yates,* for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—E. W. Bodie was in the employ of the Missouri, Kansas & Texas Railway Company of Texas in the capacity of rear brakeman on a local freight train which ran between Greenville and Hughes Springs. The train left Hughes Springs about on time on the morning of December 12, 1901, and was due at Greenville that evening. The engine pulling the train was old, defective and out of repair, and the fuel supply was insufficient in quantity and poor in quality. On this account the train fell badly behind time and finally stalled on the track about two miles from Greenville at about 5 o'clock on the morning of December 13, 1901. While the train was standing on the track at said place another freight train moving in the same direction ran into it. Bodie was in the caboose of the stalled train, and was injured in the collision. He sued and obtained judgment for $16,000.

The defendant moved to quash the citation because the same did not correctly state the names of the parties to the suit. The citation,.omitting the caption and statement of the plaintiff's cause of action, reads thus: "You are hereby commanded to summon the Missouri, Kansas & Texas Ry. Co. of Texas, a corporation, to be and appear before the honorable District Court of Hunt County, Texas, at the next regular term thereof, to be holden at the courthouse in Greenville on the second Monday in March, the same being the 10th day of March, A. D. 1902, then and there to answer the plaintiff's petition filed in a suit in said court on the 4th day of January, A. D. 1902, wherein E. W. Bodie is plaintiff and the *Missouri, Kansas & Texas Ry. Co.,* a corporation, is defendant, file number of said suit being 5235. And you will deliver to said defendant, the Missouri, Kansas & Texas Ry. Co. of Texas, a corporation, as the law directs, a true copy of this citation." The citation was properly tested by the clerk and the seal affixed. The return of the sheriff shows that it was served by delivering a true copy thereof to the local agent of "the M. K. & T. Ry. Co. of Texas, the within named defendant." The motion to quash was overruled by the court, and we think properly. It clearly appears from the citation who the parties to the suit were, and no possible injury to the defendant can have resulted from the failure of the clerk to state the full name of the defendant each time there was a reference thereto in the citation.

One of the rules of the defendant company reads thus: "Five short blasts of the whistle is a signal to flagman to go back and protect rear end of train." There was testimony to the effect that it was customary for the engineer to whistle out flagmen when he is going to stop at an

unusual place, so that the rear brakeman and conductor may arrange to protect the rear of the train from trains following. The evidence was conflicting as to whether the engineer of the train which was struck gave the flag signal on the occasion of the accident. The court instructed the jury as follows: "If you believe that under the rules of the defendant it was the duty of the engineer to give a flag signal by blowing five short blasts of the whistle when the train stopped, or so soon as he knew the train was going to stop; and if you further believe that he failed to give the flag signal at the time when, under the rules of the defendant, he was required to give it. and if you believe he was guilty of negligence in failing to give such signal, if he failed, * * * and if you believe the negligence, if any, of the engineer in failing to give the signal, if he failed, was the proximate cause of the collision, you should find for plaintiff."

It is insisted that this paragraph of the charge was erroneous because there was no allegation in the petition that there was any rule of the company, or custom among its employes, known to the company, making it the duty of the engineer to give such signal so soon as he knew the train was going to stop. It was alleged in the petition: "That the defendant had in force at that time a rule forbidding its engineers to stop their trains at such point, which stopping of said train by said engineer at said time and place was unsafe, dangerous and negligent. That the defendant also then had in force for the government of its train employes a rule requiring the engineer in charge of a train when stopping in an unusual place to signal the conductor and trainmen of his train that he was stopping, or going to stop at such unusual place, said signal being notice to them to take proper steps to protect the rear of their train from other trains that might be following in the same direction, which signal was called the flag signal, and was made by blowing five short blasts of the whistle." It was further alleged that if there was no such rule, then it was the custom, known to and acquiesced in by the company, for the engineer to give such signal for the purpose stated upon such occasion. We are of the opinion that the petition fairly raises the issue that was presented in the charge, and that the complaint of appellant is not well taken.

A further complaint of the said paragraph of the charge is that the same is upon the weight of the evidence in that it ignores the duty of the rear brakeman to protect the rear of his train when it was stopped at an unusual place, by going back and flagging a following train, without regard to whether he received a signal to do so from the engineer. There was testimony to the effect that such was his duty. But the charge complained of was presenting the plaintiff's theory of the case, and not the defensive issues, and the said paragraph of the charge concluded as follows: "And if you believe that at the time of the collision the plaintiff was exercising ordinary care for his own safety, then, in that event, you will find for the plaintiff, unless you find for the defendant under the other issues submitted to you." Among the

other issues submitted, in a special charge requested by the defendant, was whether the plaintiff was negligence in failing to protect the rear of the train. We conclude, therefore, that the said paragraph of the charge was not upon the weight of the evidence, and this conclusion brings us to the leading question in the case, which is whether the trial court erred in modifying the special charge requested by the defendant relating to the plaintiff's failure to go back and protect the rear of his train.

The said special charge reads thus: "It is shown by the evidence that one of the rules of the defendant company in force at the time of the accident provided: 'When a train is detained by an accident or obstruction, or stops at any unusual place, the flagman must immediately go back with danger signals to stop any train moving in the same direction. At a point fifteen telegraph poles from the rear of the train he must place one torpedo on the rail on the engineman's side; he must then continue to go back at least twenty telegraph poles from the rear of his train and place two torpedoes on the rail on the engineman's side, ten yards apart (one rail length) when he may return to a point fifteen telegraph poles from the rear of his train, where he must remain until an approaching train has been stopped, or he is recalled by the whistle of his engine. When he comes in he will remove the torpedo nearest his train, but the two torpedoes must be left on the rail as a caution signal to any following train.' And also the following rule: 'When on a curve or down grade the flagman must go back a distance of at least twenty telegraph poles further than is above provided, and as many more as may be necessary, before placing torpedoes, to give approaching trains ample time to stop.' If you believe from the evidence that at the time or just before or after the train stopped the plaintiff knew, or by the use of ordinary care in the course of the performance of his duties on the train he could have known, that the train was stopping or had stopped at an unusual place, and if from the time he so knew, or could in the exercise of ordinary care have known that it was so stopping, or had stopped, there was time reasonably sufficient for him to have carried out and performed the duties required of him by such rule; and if you further believe that the plaintiff violated said rule, and that such violation of said rule caused or contributed to cause the accident, you will find for the defendant." The requested charge was given with a qualification couched in this language: "If you believe that the plaintiff's violation of such rule, if he did, was negligence, he can not recover." The term negligence had been properly defined in the other charges given. The evidence showed the existence of the rules set out in the requested charge, and that the same were known to the plaintiff. He was riding in the cupola of the caboose, and was still there, or in the act of getting out, when the collision took place. The engineer and fireman testified that the train had been stopped several minutes when the accident occurred, and there was evidence tending to corroborate them in that respect. The plaintiff,

together with the conductor and another brakeman, both of whom were in the, caboose, testified that the accident happened immediately after the train stopped. · It was dark, cold, stormy and raining, and the plaintiff testified that when the train began to slow up and finally stopped, he thought it was stopping at the Midland crossing at Greenville, and that as soon as he discovered that it was not, he .prepared to go out, but before he could get out the collision occurred. There was evidence which corroborated his testimony in this particular. It did not require much investigation for the men in the caboose to ascertain that the train had not reached the Midland crossing. The plaintiff knew that another train was following, and that, if it was on time, it was not far behind. The evidence therefore raised the issues presented in the special charge, and the question is whether the charge, as modified and given, correctly stated the law upon such issues.

The substance of the contention of appellant is that, if the facts were as submitted in the said special charge, the plaintiff was guilty of negligence, as a matter of law, in failing to protect the rear of the train, and that the court erred in so qualifying the charge as to submit the issue of negligence to the jury as a question of fact. Whatever the law may be in other jurisdictions, it is well settled in this State that disobedience by the servant of the rules of the master is not negligence per se. In Railway Co. v. Adams, 94 Texas, 100, the law is stated in this' language: "The plaintiff in error presents, in different forms, the proposition that a servant who, in discharging his duties, disobeys the regulations of his master, is guilty of negligence per se, and if injured, and the act which violates such rules contributes to the injury, no recovery can be had. This rule would give to the regulations of the master the force of statutory enactments. We do not understand the law to be consistent with that contention. If a violation of the rule ᴠ shows conclusively that the servant can not recover under the facts of the case, the question of contributory negligence becomes a question of law to be decided by the court. If, however, under the facts of the particular case, there might be a phase under which the servant would be justified or excused in disregarding the rule of the company, then it becomes a question for the jury to determine whether such act is negligence; that is, whether, under all the circumstances, a reasonably prudent person would have done as the plaintiff in the case did."

In Railway Co. v. Brown, 95 Texas, 2, 63 S. W. Rep., 305, Chief Justice Gaines states the law in these terms: "It may be that the general rules of a railway company for· the conduct of its employes are not absolute. Circumstances creating an emergency may exist which may excuse the servant for disregard of a rule, hence the case would have to be clear in which the court should hold that the disobedience of a mere rule is negligence per se." In that case the servant was injured as a result of the disobedience of a general rule of the company and also of a specific order. It was held that the order was absolute, and the duty of the servant to obey it absolute, and that he could not re-

cover. In Railway Co. v. Ryan, 69 Texas, 665, it was held that where the servant was injured in an attempt to board a moving train in violation of a known rule of the company, no excuse for his conduct being shown, the company was not liable. In Railway Co. v. Wallace, 76 Texas, 636, it was held that where the servant was injured by reason of his being on the top of a box car while the train was crossing a bridge, in violation of a known rule of the company, no excuse for his conduct being shown, the plaintiff could not recover. In the following cases decided by the courts of civil appeals, wherein writs of error were denied by the Supreme Court, it was held that the question as to whether the servant's violation of the rules of the master constituted negligence was one of fact for the decision of the jury: Railway Co. v. Mortensen, 27 Texas Civ. App., 106, 66 S. W. Rep., 99; Railway Co. v. Pawkett, 28 Texas Civ. App., 583, 68 S. W. Rep., 323; Railway Co. v. Follin, 68 S. W. Rep., 810; Railway Co. v. Cornell, 29 Texas Civ. App., 596, 69 S. W. Rep., 980.

In view of the authorities cited, the question to be decided is whether, if the plaintiff had sufficient time, after he knew or ought to have known that the train had stopped or was stopping at an unusual place, to go back and protect the rear of the train, his failure to do so was such a negligent act as would preclude a recovery herein. The rule set out in the special charge is important only in that it imposed upon the plaintiff the duty of protecting the rear of the train. Whether his violation of the rule, if he did violate it and such violation caused or contributed to cause the accident, amounted to negligence, is purely a question of fact. In determining the question all the circumstances explanatory of his conduct must be taken into consideration, and the said special charge is subject to the criticism that the jury was thereby confined to the consideration of the facts enumerated therein, and that it excluded from their consideration other facts material to a decision of the question. The rule which required the rear brakeman to go back and place torpedoes on the track when the train stopped at an unusual place was merely a general rule· of· the company, and, while it appears that it was intended that the brakeman should comply with the rule without waiting for a signal from the engineer, the fact that it was the duty of the engineer to give such signal can not be ignored in determining whether a failure on the part of the brakeman to immediately leave the caboose and go back and flag the following train constituted negligence. The jury may have found that the engineer did not give the signal, and it may be that the brakeman waited a short time for the signal, thinking that, as it was not given, the train would move on immediately, and that if he got off and went back he would be left by the train. If such was the case, the jury might reasonably have concluded that a person of ordinary prudence would have acted as the plaintiff did, and held him not guilty of negligence in failing to leave the caboose instantly upon his becoming aware that the train had stopped or was stopping at an unusual place. Again, the special charge

made the plaintiff guilty of negligence if he failed to get out and go back as soon as he ascertained that the train was stopping at an unusual place, while the rule in question did not, in terms at least, impose such duty upon him. The special charge, as presented to the court, was defective in singling out the facts stated therein and confining the consideration of the jury to those facts alone, and in giving to the rules of the company the force of law, and the trial court did not err in quali- fying the charge by requiring the jury to find, upon the whole case, whether the plaintiff's failure to immediately leave the caboose and go back to flag the following train was an act of negligence.

The rules of the company are not of such a character as to impose upon the brakeman an absolute duty to comply therewith under penalty, otherwise, of being held guilty of negligence without regard to the cir- cumstances of the case. At the request of the defendant the court gave a special charge which reads thus: "If you believe from the evidence that the plaintiff knew, or by the exercise of ordinary care in the per- formance of his duties on the train he would have known, the train was stopping or had stopped at an unusual place, and if there was reasonable time within which a man of ordinary care and prudence, occupying the position on the train that the plaintiff occupied, could by the use of the means at hand have prevented said collision, and if you further believe that the plaintiff did not use such means, and you further find that his failure to do so, if he did fail, was a failure to exercise ordinary care, and that such failure caused or contributed to cause the accident, you will find for defendant." When all the instructions which were given to the jury on the issue as to the plaintiff's contributory negligence are considered together, we think it clearly appears that the issue was fairly submitted in a manner as favorable to appellant as it had a right to demand. What is said above is sufficient to dispose of appellant's complaints of modifications of other requested charges.

A special charge on the issue of assumed risk was asked by the de- fendant and refused by the court. Appellant was not entitled to a more favorable charge on that issue than was embraced in the main charge, and there was no error in refusing to give the special charge.

Appellant complains of the action of the court in permitting the plaintiff to prove that the rules of the defendant company and of rail- way companies generally required the giving of a signal by enginemen when stopping at an unusual place for flagman to go back and protect the rear of the train. The objection to this evidence was that the rules were printed and showed for themselves what was required, and that it was incompetent for a witness to state what was required by the rules. The rules were in evidence when this testimony was admitted. The rule, which has been quoted above, stated how the flag signal should be given, but did not prescribe when or under what circumstances it should be given. The construction placed by the witness on the rule did not vary the rule, and was pleaded by the plaintiff. We think that the evidence was admissible.

Appellant complains of the action of the court in permitting the plaintiff to prove that it was not customary and was not the duty of the rear brakeman to put out fusees at the place of the accident. One of the rules of the company reads thus: "A fusee is a danger signal to be lighted and placed on the track at night in cases of accident or emergency. A train finding a lighted fusee burning on the track must come to a stop, and not proceed until it has burned out." The court approved the bill of exceptions to the admission of the evidence complained of, with this explanation: "This testimony was introduced on redirect examination after the defendant had proved by the witness when it was his duty to use fusees, and that he had used a fusee when the train stopped at Cumby tank that night, and that he had not used a fusee at Wolfe Creek, and was admitted as supplementary to the printed rules, which did not state the places where the fusees should be used." As we understand the record the plaintiff was not attempting to show, by the opinion of the witness, that it was not the duty of the brakeman to put out a fusee under the circumstances which existed at the time of the accident, but that he was trying to prove that there was no rule or custom which made it the duty of the brakeman to put out a fusee at that point every time the train passed there. The testimony was admitted, and was admissible, for such purpose. The question as to whether the plaintiff should have put out a fusee on the occasion of the accident was for the jury, and the plaintiff was not seeking, by the testimony complained of, to elicit the opinion of the witness upon that question.

Appellant insists that the evidence is not sufficient to show that it is liable to the plaintiff for the injuries sustained by him. The evidence is such as would have warranted a finding in favor of the defendant on the issue of liability, but is not such as would authorize us to hold that no other finding was permissible.

Appellant's remaining assignment complains of the verdict as excessive. It was shown that the plaintiff was suffering from varicocele, but it is somewhat uncertain as to whether this trouble is attributable to the injuries received in the accident. Assuming that it is, still the matter is not of much consequence, as the disease is not of a serious character. The plaintiff's physician, who testified in his behalf, stated that he did not attach much importance to the fact that the plaintiff was affected with said ailment. It was further shown that the plaintiff received an injury on the back of his left wrist which has resulted in what is known as dropwrist, that is, in the paralysis of the nerves which control the muscles on the back of the wrist, thereby impairing the use of plaintiff's left hand. It appears that the impairment will be permanent and that he will never be able to raise his hand through the exercise of the muscles of the wrist. It also appears that his left hand and arm are slightly smaller than his right hand and arm, and it is contended that his left hand and arm are perishing away. The difference in the size of his hands and arms is not so marked as to indicate

any specially abnormal condition, or to give rise to any serious apprehension of a great wasting away of the injured hand and arm. There seems to be no reasonable ground for anticipating a further perishing away of the injured members except such as will naturally result from the decreased use thereof. It was further shown that the plaintiff was injured in the back as the result of the accident. He testified that one of his legs was partly devoid of the sense of feeling, and that it gave him pain to stand on it, and that he could not walk without crutches. The physicians who treated him and who testified in his behalf stated that such results might follow from an injury to the back, and that said injury might affect the reproductive organs. It does not appear that the said organs have, as yet, been injuriously affected. The trial was had some four months after the accident, and the condition of the plaintiff in respect to the trouble with his leg was somewhat improved. His physicians declined to give their opinion as to what the outcome would be. One of them was inclined to the opinion that the prognosis was bad, while the other took a more hopeful view. They stated that it was too soon after the accident to give a satisfactory opinion; that the final result might be total paralysis, partial paralysis or complete recovery of the affected leg. As the plaintiff was then improving, it seems that the chances of complete recovery are greater than the chances of total paralysis. We do not regard the testimony as being sufficient to show that the plaintiff has sustained any greater injury to his leg than the partial paralysis thereof. The evidence is very persuasive to the effect that he will in time recover such use of his leg as will enable him to walk without crutches. The fact that he is suffering at all, in that respect, depends almost entirely upon his own testimony, the symptoms being subjective, and his credibility was impeached in such way as to necessarily lessen confidence in the truth of his statements. The physical indications of injury to his person were very slight. He was confined to his bed only a short time, and seems not to have suffered any considerable pain, mental or physical. His capacity to labor and earn money have been diminished, but not destroyed. At the time he was injured he was about 27 years old. His regular wages were $60 per month, and he received extra pay when he worked over time, which increased his wages one month to $78. His first work in the railway service was as fireman on a train out of Little Rock, Ark. He worked in that capacity there for about four years. He then quit and went to the northwestern States. He remained there for about a year, working as fireman for various roads. He appears, while there, to have been drifting aimlessly about, with no desire for permanent work. He returned to Little Rock and decided to come to Texas. In order to better enable him to secure a job in this State he bought what he knew to be a forged and false certificate of recommendation from the superintendent of a northwestern road for which he had never worked. He obtained employment from appellant on the strength of said certificate. At the time he was employed he represented to appellant that he was married,

and gave the name of his wife, and stated that she resided in a northwestern city. This was doubtless done to give color to the said certificate. He has never been married. He was entirely without means when he was employed by appellant. The facts do not point him out as a man likely to seek and retain permanent and regular employment. A man with his record is not calculated to grow in efficiency in his work and in favor with his employers. A careful consideration of the matter has convinced us that the contention of appellant that the verdict is excessive is well taken. We are of the opinion that one-half of the sum awarded to him by the jury will compensate him for the injuries he has sustained and that the evidence does not warrant a recovery for a greater sum. If the appellee shall, within fifteen days from this date, remit one-half of the judgment recovered in the court below, the judgment will be reformed and affirmed, otherwise the judgment will be reversed and the cause remanded.

*Affirmed upon remittitur.*

Writ of error refused.