We adopt the following statement of the case made by the Court of Civil Appeals:
"This appeal is from a judgment for $15,000 damages for personal injuries alleged to have been inflicted by the negligence of appellant.
"It was alleged, as his cause of action by the appellee, that on March 16, 1903, while he was in the employ of appellant as a locomotive engineer operating an engine drawing one of its passenger trains, his engine collided with the rear of another one of appellant's passenger trains standing on the main track of its road at Kyle Station, thereby painfully and permanently injuring him.
"That appellant and its servants operating the standing train were negligent in permitting said train to stand on said track, in this: that said train was behind its schedule time for leaving said station, and that appellant and its employes in charge of said train, knew that the train upon which appellee was working was following the standing train, and it became the duty of appellant to defendant and its employes to send back a flagman and to place torpedoes on the track to warn the employes on appellee's train; which duty appellant and its employes negligently failed to perform, and that such negligence was the direct cause of appellee's injuries.
"The injuries are alleged as follows: "Plaintiff's left foot was crushed and mangled so as to necessitate the amputation of the anterior portion of it, his right hand badly crushed and mangled, his back and spine severely injured and his heart greatly injured."
"The appellant answered by a general denial, pleas of assumed risk and contributory negligence.
 "CONCLUSIONS OF FACT:
"We have concluded from reading the evidence, in the light of the written and oral arguments of counsel for either party, that it is reasonably sufficient to warrant the jury in finding the following facts, (1) that on the early morning of March 16, 1903, appellee, who was at the time in the employ of appellant as a locomotive engineer and operating one of its locomotives in drawing one of its trains, was injured by reason of his engine colliding with the rear end of one of appellant's trains standing on its main track at Kyle; (2) that the collision, and consequent injury to appellee, was proximately caused by the negligence of appellant's servants in charge of and operating the standing train in failing to send back a flagman to place torpedoes on the track to warn appellee and the employes of the train whose engine he was operating that the train it collided with was standing on the track at Kvle; (3) that the appellee in operating his engine at the time of collision was in the exercise of ordinary care, and guilty of no negligence contributing to the collision or his injury; (4) that appellee's injury did not result from any risk assumed by him, such as was ordinarily incident to his employment and (5) that by reason of the injuries so caused *Page 205 
by said negligence of appellant appellee was damaged in the sum of $12,000."
The undisputed evidence shows that on the morning of the accident passenger trains Nos. 5 and 7 left Austin, Texas, going South on the International Great Northern Railroad. Train No. 7 was the leading train, and train No. 5 followed leaving Austin about ten minutes after train No. 7. Frank Brice was the engineer on train No. 5. He was an experienced engineer and had in his possession the time card of the company which showed that train No. 7 was due to leave Kyle at 7:01 a.m. that day. When train reached Buda station, between Austin and Kyle, it was about ten minutes behind train No. 7. Brice knew the time that No. 7 should leave Kyle and was acquainted with the rules of the company which were printed on the time card.
The time card contained the following rules: "That all employes whose duty was prescribed by the rules, should have and keep a copy of the time card; should study and understand the rules and obey them."
Rule No. 11: "All trains and engines must approach stations and water-tanks under control, expecting to find another train occupying the main track."
Rule No. 13: No train must be stopped on the main track, except at regular stops of passenger trains, without a flagman being sent out at once.'"
Rule No. 8: Torpedoes and red signals must be carried on all engines, baggage cars and cabooses and by all bridge and track foremen, to be used to stop trains when necessary. When a train from any cause has to stop on the main track in such position as to endanger it from approaching trains, it must be protected by torpedoes and red signals."
Rule No. 16: Passenger trains in sections, or running near each other in the same direction, must keep ten minutes apart."
The evidence is conflicting upon these points: (1) Train No. 7, having stopped at Kyle beyond its schedule time, was it the duty of the conductor of that train to send out a flagman to the rear with signals and torpedoes before 7:11 a.m.? and (2) Did train No. 5 run into and collide with train No. 7 before 7:11 a.m. that morning?
Counsel for the railroad company do not claim that the conductor of train No. 7, while at Kyle, sent out a flagman with torpedoes and signals as required of other than passenger trains by the rules above quoted. This being a passenger train, and the stop at Kyle being a regular stop of that train, it is insisted on part of the railroad company that the train was protected against the following train No. 5 by the requirements of rule No. 16: "That passenger trains running near each other and in the same direction must keep ten minutes apart;" and that this rendered it unnecessary for the conductor of train No. 7 to send out any flagman or other notice prior to the expiration of the ten minutes allowed between the running of the trains. On the other hand, it is claimed by counsel for defendant in error that the exemption of train No. 7 from the performance of the duty of sending out a flagman extended only to its schedule time for remaining at the station. Evidence was introduced by both parties as to the practical *Page 206 
construction by trainmen of rule No. 16 and the duty of the leading passenger train under the circumstances. The conflict was decided and sharp between the witnesses upon this issue. The trial court gave a general charge upon the subject of negligence and upon the duties of the conductors and trainmen, but there is no charge given that directed the mind of the jury explicitly to the very facts surrounding the transaction out of which the injury arose. Counsel for the railroad company sought by special charge number 3, which we copy below, to group the facts upon which its defense depended and by so doing to bring the mind of the jury to the consideration of the vital issues in the case: "If you believe from the evidence that train No. 7 had a right to remain at Kyle until 7:11 a.m., as claimed by defendant, without putting out a flagman or torpedoes to protect itself against No. 5, and that plaintiff ran his train into Kyle before the expiration of said time, you will find for the defendant."
This charge presented to the jury pointedly the question, was it the duty of the conductor of train No. 7, while at its regular stop at Kyle and remaining over the schedule time, to send out a flagman with signals and torpedoes within the next succeeding ten minutes after its leaving time. If under the testimony it was the duty of the conductor to take that precaution as against No. 5, then there could be no question that he was guilty of negligence, because there was no question that he failed to perform that duty. If, however, it was not his duty to take that precaution, but his train was protected by the rule which required the following train to keep ten minutes behind the time of No. 7, then the failure to send out the flagman, etc., was not negligence, because there was no duty resting upon the conductor to do so, and under that state of facts, the railroad company would not be responsible for the injury without reference to the question of contributory negligence or not of the defendant in error.
Rule No. 16 is unambiguous and positive in its direction that train No. 5 should have been kept ten minutes behind the time of train No. 7, because the engineer and conductor of train No. 5 had control of its movements and the rule could be obeyed only by controlling the movements of the following train. It therefore follows that if the conductor on train No. 7 was not negligent, and if it be true that train No. 5 was run into the depot at a time prior to ten minutes after the leaving time of train No. 7, the engineer and conductor who had control of the movements of train No. 5 were guilty of negligence which caused the injuries to plaintiff; therefore, he could not recover. We can not conceive of an excuse that could be offered for the act of the engineer of train No. 5 in running his train to the depot and into collision with train No. 7 at a time within the ten minutes limit prescribed by the rule, if he did so. He had the time card; knew the train time of No. 7 at Kyle; he had his watch — he said he looked at it a mile from Kyle — and could not have been misled as to the time on which he was running. In the ordinary movement of the train there could be no reason why he should have violated this rule. The foggy, dark morning was an additional reason for strict obedience to the rule. It was therefore proper for the court to charge the jury that if the conductor of train No. 7 was guilty of no negligence, and if the engineer in charge of *Page 207 
train No. 5 run his train into the other within less than ten minutes of the time allowed by the schedule, they should find for the defendant.
The Honorable Court of Civil Appeals said in its opinion that this charge was upon the weight of the evidence but did not point out the particular in which that vice consisted and we are unable to see in what way this charge could have influenced the jury as to the weight they should give to the testimony of any witness or any circumstance in evidence before them. The charge correctly and succinctly stated to the jury what should be their verdict in case they should reach a certain conclusion from the testimony, and that was not only legitimate but highly proper in this case.
The trial court erred in refusing to give the charge requested by the defendant.
The plaintiff in error complains of a charge given by the court to the jury to the effect that if the plaintiff, Brice, knew or by the exercise of ordinary care would have known that another passenger train was standing at the station at Kyle, and Brice failed negligently to keep a proper lookout for said train, which negligence proximately caused or contributed to cause his injuries, to find for the defendant. A charge for the defendant is generally held not to be reversible error, when the plaintiff recovers, but it is not necessary for us to determine that matter in this instance. The defendant below requested the court to give this charge: "If you believe from the evidence that the plaintiff failed to keep a proper lookout as he run his train into Kyle and that such failure, if any, was negligent, and that such negligence, if any, proximately caused or contributed to cause the collision and plaintiff's injuries, you will find for the defendant." The special charge correctly stated the law and should have been given. Brice's duty to keep a lookout while approaching the station did not depend upon his knowledge of whether or not there was a train standing at that station. A want of knowledge of the fact would create a greater necessity for his keeping a lookout in anticipation that a train might be there and that a collision might occur in approaching the station.
For the error in refusing to give the special charge number 3 the judgment of the District Court and that of the Court of Civil Appeals are reversed and this cause is remanded for a new trial.
Reversed and remanded. *Page 208