## HUNTER v. TEXAS ELECTRIC RY. CO.
### No. 9552.

Court of Civil Appeals of Texas. Austin.
April 24, 1946.

Rehearing Denied May 8, 1946.

O. H. Woodrow, Webb, Elliott & Rogers, and Spearman Webb, all of Sherman, for appellant.

Freeman, Wolfe & Keith, of Sherman, and Gullett & Gullett, and Alexander Gullett, all of Denison, for appellee.

BLAIR, Justice.

Appellant, R. P. Hunter, sued appellee, Texas Electric Railway Company, to recover damages for personal injuries sustained in a head-on collision between an electric motor car driven by himself and a similar one driven by T. N. Maxwell. Appellant admitted that in violation of his time card instruction and the rules of appellee he proceeded about three-fourths of a mile beyond the siding where he was to meet and pass the car driven by Maxwell, which fact caused the collision between the cars. In consequence the trial court submitted only issues of discovered peril, which the jury found against appellant; and conditionally on having answered "no" to the discovered peril issue, an issue as to whether the negligence of appellant in passing the meeting point was the sole proximate cause of the collision, which the jury answered in the affirmative. Accordingly judgment was rendered for appellee.

Appellant contended that his pleadings and evidence raised jury issues on three acts of negligence as the proximate cause of the collision, and that the court erred in refusing to submit his requested special issues for jury findings thereon. The three acts of negligence were as follows:

1. That appellee was negligent in failing to provide an automatic block device in the sector of the collision, or in employing the time card system it did for the passage of cars in the sector of the collision.

2. That the operator (Maxwell) of the southbound car failed to properly slow down his car before the collision.

3. That Maxwell failed to apply the brakes on his car as he approached the point of the collision.

The testimony of appellant having shown as a matter of law that his negligence in violating his time card instruction and the rules of appellee in passing the meeting point without performing the mandatory duties devolving upon him under the rules of appellee was the sole proximate cause of this collision, the only issues that need be submitted were those relating to discovered peril. And the jury having found those issues against appellant he is not entitled to recover.

The evidence shows that appellee railway line here involved is operated between the cities of Sherman and Denison. Appellee operates electrically propelled interurban cars for carrying passengers and freight for hire, and is engaged in interstate commerce. Each passenger car is operated by one man known as an operator. To facilitate the movement of cars, called trains, between Sherman and Denison appellee furnished each operator daily with a time card. The time card under which appellant was operating at the time of the collision was hung on a hook immediately in front of where he was seated on the left-hand front of the car. It required five trips daily by him from Sherman to Denison, a distance of 10 miles, and this schedule had been the same for the previous six months. Appellant had been employed by appellee or its predecessors for about 32 years, the first 8 years as a dispatcher handling the movement of cars or trains, and the last 24 years as an operator, and for the last 11 years he had operated a one man car or train over this route between Sherman and Denison under the time card method or system. The time card required appellant to meet, wait for, and pass the car operated by Maxwell at a siding called Woodlake. On May 2, 1944, on his fourth trip for the day, appellant left Sherman at 2:30 on schedule time, going north to Denison. He was operating "Train No. 58," which was to meet, wait for, and pass "Train No. 15," operated by Maxwell at 2:45 at Woodlake. The time card and rules of appellee required appellant wait there for the Maxwell train to pass on the siding, and if the Maxwell train should display a certain flag showing another section or extra train following, to wait until same had passed on the siding before he should proceed. If the Maxwell train or car were late, appellant

was required under the rule to go to the nearby phone booth of appellee and call the dispatcher for further orders before proceeding.

Appellant testified that he reached Woodlake about on time; that he glanced over his shoulder and thought he saw Maxwell's car on the siding; that in about one-half of a minute without looking for any flag that might be displayed or without phoning the dispatcher, he passed the meeting point and had proceeded about three-fourths of a mile when he saw the Maxwell car coming around a curve very fast, and the collision occurred at about 2:47. Appellant testified that when he saw Maxwell's car he brought his car to about a stop; that Maxwell, judging from the action of his car, appeared to have thrown it in reverse, a method of stopping it quickly, and then Maxwell jumped from the door of his car, which proceeded to the point of the collision, the impact of which crushed the front end of both cars, breaking appellant's leg, and otherwise injuring him, and also injuring a number of passengers. Appellant admitted that he violated the instruction on his time card and the rules of the company in proceeding beyond the meeting point, and as to the cause of the collision appellant testified:

"Q. Now, No. 15 was coming along in a southerly direction. That is where he is supposed to be? A. Yes, sir.

"Q. At that time, you were supposed to be waiting back at Woodlake? A. Yes, sir.

"Q. And you didn't wait for him at Woodlake, as the time card required you to do? A. I didn't, no.

"Q. And you passed that meeting point and met him down at the curve? A. Yes.

\* \* \* \* \* \*

"Q. During all that time you had been following this regular schedule that you outlined to the jury, leaving Sherman at those various times? A. Yes, sir.

"Q. This is the only time in the six months' period that you failed to stop and wait for No. 15 at Woodlake, or call the dispatcher? A. That's right.

"Q. If you had failed to call the dispatcher or waited at Woodlake prior to May 2nd, you would have had the accident prior to this time? A. Yes, the chances are.

"Q. All right. Now, Mr. Hunter, if you had stopped at Woodlake, as the time card and rules required you to, this would not have happened? A. No.

\* \* \* \* \* \*

"Q. What caused the accident? A. Two cars collided.

"Q. What caused the two cars to collide? A. Because they were on single tracks.

"Q. Is there any other reason, Mr. Hunter? A. Because they passed the meeting point.

"Q. Who did? A. I did."

■ Under the foregoing facts no excuse was offered by appellant as to why he violated the instruction on his time card and the rules of the appellee. The particular instruction on the time card and the rules of appellee were to avert collisions. Appellant had been operating under them for a long period of years. The time card was immediately before appellant on the hook on which it was required to be and his violation of it and the other rules, which he admitted, caused the collision. The rule is settled in Texas that where an injured trainman is at fault, or where his injury is due to his own violation of the rules of the railroad company, or where he has neglected to comply with a train order, he is precluded from recovering. This rule of law is stated in 29 Tex.Jur. 339, Sec. 197, as follows: " \* \* \* except in a case to which the rule of discovered peril applies, one whose injury was due to his own violation of some statute or of a rule of the company, or who had neglected to comply with a train order or to give necessary orders to other trainmen, is precluded from recovering—at least, in the absence of some exonerating circumstances. Other fault on the part of the injured trainman is similarly a ground for denying a recovery, provided it is of itself the efficient cause of the injury."

The following cases support the test: Texas Traction Co. v. Nenney, Tex.Civ. App., 178 S.W. 797, error refused; Inter-

national & G. N. R. Co. v. Brice 100 Tex. 203, 97 S.W. 461; Id., Tex.Civ.App., 126 S.W. 613; Missouri, K. & T. R. Co. v. Johnson, 92 Tex. 380, 48 S.W. 568; Lancaster v. Jarrett, Tex.Civ.App., 258 S.W. 271; Id., Tex.Civ.App., 267 S.W. 518; Unadilla Valley R. Co. v. Caldine, 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224; Galveston, H. & S. A. Ry. Co. v. Brown, 95 Tex. 2, 63 S.W. 305; Missouri, Pac. R. Co. v. Jones, Tex.Com.App., 24 S.W.2d 32.

It is true that appellant alleged that appellee railway company was negligent in the three respects stated, and that each of such acts constituted negligence and a proximate cause of his injury, but under his foregoing testimony his own disobedience of the time card instruction and the rules of appellee caused the collision and injury to himself. In consequence neither the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51, nor of Art. 6440 of the Revised Statutes of Texas have any application to the instant case. These statutes require the injured employee to allege and prove that his employer was negligent and that such negligence was the proximate cause in whole or in part of the injury sustained by him. Such statutes have no application where the violation of a train order or rule is by the employee and the disobedience whereof was the sole efficient cause of the accident.

In the Caldine case, supra, the court held that no recovery can be had under the Federal Employers' Liability Act for the death of a conductor who orders his train to proceed when reaching a point where his written orders require him to pass a train from the opposite direction, which had not arrived.

In Davis v. Kennedy, 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212, it was held that where it was the personal duty of an engineer to ascertain whether another train had passed, under instructions never to pass a point from which only a single track led unless he knew as a fact that another train had passed, no recovery can be had under the Federal Act for his death when he ran his train out on a main track before knowing that a train from the opposite direction had passed.

There was no proof whatever that the time card system was inadequate, and the evidence showed that if a block signal system had been installed it would have added nothing to the positive time card instruction and the rules of appellee, which appellant violated without cause, and which was the sole efficient cause of the collision and his injury. These facts are entirely analogous to the facts in the case of Southern R. Co. v. Youngblood, 286 U.S. 313, 52 S.Ct. 518, 520, 76 L.Ed. 1124, wherein a conductor failed to obey a written order to pass another train at a stated point, in consequence of which a headon collision occurred, killing the conductor, the court held with respect to a later verbal order which merely required the conductor to carry out his written order in hand, as follows:

"The case comes to this, that respondent's intestate had clear and definite orders which if obeyed would have avoided the accident, and the disobedience whereof was the sole efficient cause of his death. As said in Unadilla Valley R. Co. v. Caldine, 278 U.S. 139, 142, 49 S.Ct. 91, 73 L.Ed. 224, [232]:

"'A failure to stop a man from doing what he knows that he ought not to do, hardly can be called a cause of his act. Caldine had a plain duty and he knew it. The message would only have given him another motive for obeying the rule that he was bound to obey.'"

The court submitted the issue of sole proximate cause conditionally upon a negative answer to the preceding issues of discovered peril. Appellant contends that since the court submitted no issue of primary negligence on the part of appellee, and submitted only the issues of discovered peril, the submission of the issue of sole proximate cause as it did was calculated to cause the jury to believe that it was the belief of the court that the prior negligence of appellant in passing the meeting point was important and to cause the jury to take that part into consideration in answering the special issues on discovered peril as it did.

The conditional submission of the issue of sole proximate cause is not subject

to the objection made by appellant. Rule 277, Texas Rules of Civil Procedure, expressly authorizes the conditional submission of special issues. There was nothing in the method of submission of the issue which was calculated to confuse or mislead the jury. Maryland Casualty Co. v. Hearks, Tex.Sup., 190 S.W.2d 62. The issues of discovered peril were submitted unconditionally and the jury found such issues against appellant. The fact that the jury may have found in answer to the issues of damages that appellant received "none" does not show prejudice in the method of submitting the issues of discovered peril. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334.

Appellant having admitted that he violated his specific time card instruction and the rules of appellee in proceeding beyond the meeting point for passing the Maxwell car, he can not recover for injuries sustained as the result of the collision caused by his own disobedience of the instruction and rules of appellee. The rules stated in the foregoing Texas and Federal decisions deny appellant any recovery under the facts of this case.

The judgment of the trial court is affirmed.

Affirmed.