## UNADILLA VALLEY RAILWAY COMPANY *v.* CALDINE, ADMINISTRATOR.

No. 73. Argued November 27, 1928.—Decided December 10, 1928.

*Mr. H. Prescott Gatley,* with whom *Messrs. Benjamin S. Minor, Arthur P. Drury,* and *Wirt Howe* were on the brief, for petitioner.

*Mr. David F. Lee,* with whom *Mr. Thomas B. Kattell* was on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the Court.

Harold E. Caldine, an employee on the petitioner's railroad, was killed in a collision and his administrator brought this action. The case is within the Federal Employers' Liability Act and the only question before us is whether the death resulted in whole or in part from the negligence of any of the employees of the carrier, within the meaning of the Act. Act of April 22, 1908, c. 149, § 1; 35 Stat. 65. Code, Title 45, § 51.

Caldine was conductor of train No. 2 upon a single track that passed through Bridgewater. He had printed orders that his train was to pass train No. 15 in Bridgewater yard, and that train No. 15 was to take a siding there to allow No. 2 to pass. The order was permanent unless countermanded in writing by the superintendent. Its purpose to prevent a collision was obvious and there was no excuse for not obeying it. But this time, after

reaching Bridgewater, instead of waiting there as his orders required him to do, Caldine directed his train to go on. The consequence was that at a short distance beyond the proper stopping place his train ran into train No. 15 rightly coming the other way, and he was killed. The facts relied upon to show that the collision was due in part to the negligence of other employees are these. The conductor of No. 15 generally, or when he was a little late in arriving at a station about two miles from Bridgewater, would telephone to the station agent at Bridgewater that he was coming. He did so on the day of the collision. The station agent who received the message testified that he told the motorman of No. 2, but the motorman denied it. At all events the deceased, the conductor of No. 2, did not receive the notice. It is argued that the failure to inform the conductor, and the act of the motorman in obeying the conductor's order to start, if, as the jury might have found, he knew that train No. 15 was on the way, were negligence to which the injury was due at least in part. It is said that the motorman should have refused to obey the conductor and should have conformed to the rule, and that his act in physically starting the car was even more immediately connected with the collision than the order of the deceased.

The phrase of the statute, "resulting in whole or in part," admits of some latitude of interpretation and is likely to be given somewhat different meanings by different readers. Certainly the relation between the parties is to be taken into account. It seems to us that Caldine, or one who stands in his shoes, is not entitled as against the Railroad Company that employed him to say that the collision was due to anyone but himself. He was in command. He expected to be obeyed, and he was obeyed as mechanically as if his pulling the bell had itself started the train. In our opinion he cannot be heard to say that his subordinate ought not to have done what he ordered.

He cannot hold the Company liable for a disaster that followed disobedience of a rule intended to prevent it, when the disobedience was brought about and intended to be brought about by his own acts. See *Davis* v. *Kennedy,* 266 U. S. 147.

Still considering the case as between the petitioner and Caldine, it seems to us even less possible to say that the collision resulted in part from the failure to inform Caldine of the telephone from train No. 15. A failure to stop a man from doing what he knows that he ought not to do, hardly can be called a cause of his act. Caldine had a plain duty and he knew it. The message would only have given him another motive for obeying the rule that he was bound to obey. There was some intimation in the argument for the respondent that the rule had been abrogated. The Courts below assumed that it was in force and we see no reason for doubting that their assumption was correct.

We have dealt with the difficulties that led the Court of Appeals to a different conclusion and are of opinion that the judgment must be reversed.

*Judgment reversed.*