MARY ROCCO, as Executrix, etc., of JOSEPH ROCCO, Deceased, Respondent, *v.* LEHIGH VALLEY RAILROAD COMPANY, Appellant.*

Third Department, January 14, 1931.

*Cobb & Cobb* [*Harold E. Simpson* of counsel], for the appellant.

*Daniel Crowley* [*Riley H. Heath* of counsel], for the respondent.

WHITMYER, J.   The action is for negligence under the Federal Employers' Liability Act.

The question is the applicability of the rule of comparative negligence.

Deceased was a track inspector on section 25 of defendant's Auburn-Ithaca single-track branch, running northerly from Ithaca, along the easterly shore of Cayuga lake.

In making his inspection, he used a speeder, having two wheels on the right side and one wheel on the left, and operated by foot. It could readily be taken from the track.

While on the way northerly on December 8, 1927, about three-thirty P. M., he was killed in a collision with a passenger train, of two cars, drawn by a gasolene engine, going southerly.

The collision occurred on a curve, where the view was obstructed from each direction.

Failure to sound the whistle in approaching the curve was the charge of negligence against defendant.

A rule required two toots of the whistle, not short blasts, but somewhat prolonged, " running against current of traffic; when

approaching highway crossings immediately after sounding the prescribed whistle signal, and approaching curves and other points where the employees may be at work on track or bridges."

The applicability of the rule was questioned, but there was evidence that it applied to a single as well as to a double track, and there was corroborating evidence that whistles had been sounded in approaching the curve since June, 1920.

A high wind was blowing from the lake on that day; the track had been washed out in places and repair gangs were repairing it; the train was very late and was losing time right along; deceased was due to leave Ithaca at three-thirty P. M.; the engineer knew it; and the question arises whether or not the engineer should not reasonably have suspected that workmen or deceased would be in the vicinity of the curve, when the train reached it.

In that situation, whether or not there was a duty to sound the whistle at the curve and whether or not it was actually sounded there, were questions of fact. (*Blanchard* v. *D., L. & W. R. R. Co.*, 211 N. Y. 79, 84; *Schowerer* v. *N. J. & N. Y. R. R. Co.*, 164 App. Div. 865; *McAuliffe* v. *N. Y. C. & H. R. R. R. Co.*, 172 id. 597, 602; *Smith* v. *Delaware & Hudson Co.*, 227 id. 269, 271.)

And the jury found for plaintiff on the questions.

On the other hand, defendant claims that the negligence of deceased, in violating an unwritten rule, was the sole and proximate cause of his accident and death. If so, he may not recover. (*Unadilla R. Co.* v. *Caldine*, 278 U. S. 139; *Great Northern Railway* v. *Wiles*, 240 id. 444; *Frese* v. *Chicago, B. & Q. R. R.*, 263 id. 1; *Davis* v. *Kennedy*, 266 id. 147.)

The rule required him, before starting out with the speeder, to inquire of the operator or dispatcher about the location of trains on the line.

Defendant had issued a book of rules, but this one had not been printed, although there was evidence that it had been in force since June, 1920.

And there was evidence that deceased knew about it, but that he did not make the inquiry before starting out on this occasion.

However, there was evidence that it was his duty to go out, after making the inquiry, regardless of the location of trains.

While safety was the alleged reason for the rule, it did not prohibit an inspector from starting out after a train had left the last reporting station and before its arrival at Ithaca, if inquiry showed that it had left.

If there had been such a prohibition, the violation would have brought the case within the violations in the cited cases.

On this occasion the train left Ludlowville, the last reporting

station, eight miles from Ithaca, at three-fourteen P. M., and deceased was to start out on his inspection at three-thirty P. M. Inquiry after three-fourteen P. M. would have been without avail.

But it was his duty to go out after inquiring, whether he learned that trains were on the line or not. And if he had learned where the train was, when he started, he might have been killed, nevertheless. Knowledge of its location would not have helped, if he erred in judgment or was negligent. And there was evidence that he was attempting to remove the speeder from the track when the train collided with it.

Thus, it appears that his failure to inquire about the location of trains was not the primary cause of the collision. The jury found, on sufficient evidence, that deceased was negligent and that the engineer, also, was negligent, and rendered its verdict on the theory of comparative negligence.

We think that the judgment should be affirmed, with costs.

All concur, except DAVIS, J., who dissents, with an opinion, in which VAN KIRK, P. J., concurs.

DAVIS, J. (dissenting). There was a rule well understood by the deceased employee that, before going out on his " speeder " on his inspection trip, he should obtain from the dispatcher the " line up " of trains on the road. That gave him information where the trains were located and how they were moving so that he would be in no danger from collision with them. It was a rule of safety highly important on this single-track road which ran along the lake shore curving around high rocky bluffs where the view ahead was often obscured and the noise of an approaching train could not well be heard.

Had the employee before starting out sought the information obtainable under this rule he would have discovered that a train running into Ithaca behind schedule time had already passed the last station to the north, and might be expected at any time. He disobeyed the rule and left Ithaca for the north without knowing that a train was approaching. An accident was inevitable. Disobedience of a safety rule is something more than contributory negligence. It may constitute generally, as I think it did in this case, a primary cause of the accident. (*Great Northern Railway* v. *Wiles*, 240 U. S. 444; *Southern Ry.* v. *Gray*, 241 id. 333; *Frese* v. *Chicago, B. & Q. R. R.*, 263 id. 1; *Davis* v. *Kennedy*, 266 id. 147; *Unadilla R. Co.* v. *Caldine*, 278 id. 139; *Unadilla Valley R. Co.* v. *Dibble*, 31 F. [2d] 239.)

There is nothing to indicate that there was any duty on the part of the engineer to give a signal at the point where the accident occurred, or that the decedent relied on such a signal. The latter

went forth without vital information he might readily have obtained, and the unfortunate accident followed as a result of that primary cause. The burden of responsibility may not so easily be shifted to another by saying that the engineer should have given a whistle signal before rounding the curve, and, therefore, comparison may be made between negligent acts.

I think the judgment and order should be reversed on the law and the complaint dismissed.

Van Kirk, P. J., concurs.

Judgment and order affirmed, with costs.