JOHN G. CEDERGREN v. MINNESOTA STEEL COMPANY.[1]

March 3, 1933.

No. 29,085.

[1]Reported in 247 N. W. 235.

332

*J. H. Whitely* and *Nelson & Cedergren,* for appellant.
*Dennis F. Donovan,* for respondent.

STONE, JUSTICE.

Suing for damages alleged to have resulted from defendant's negligence, the original plaintiff, George Kurtz, had a verdict for $7,500. His claim was that a risk of his employment arising through the employer's negligence resulted in a disease which, while it totally disabled him, was not one of the occupational ailments covered by the workmen's compensation law. G. S. 1923 (1 Mason, 1927) § 4327; Donnelly v. Minneapolis Mfg. Co. 161 Minn. 240, 201 N. W. 305. Judgment notwithstanding the verdict was ordered for defendant below on its alternative motion for that relief or a new trial. Soon thereafter Mr. Kurtz died. His administrator, above named, was substituted as plaintiff and appeals from the judgment.

From August, 1923, until July 24, 1927, Kurtz worked in defendant's steel plant at Duluth; from March, 1925, as a stoker-repairman. He quit work because of a disabling malady diagnosed as transverse myelitis. The result, as already indicated, was fatal. There is a sharp issue of causation which need not be gone into, for in our opinion the record demonstrates that, on his own theory

of the facts and his own evidence, Kurtz was chargeable with contributory negligence as matter of law. The order for judgment below held that there was both assumption of risk and contributory negligence. What we shall say on the latter subject will make unnecessary discussion of the former. But as to assumption of risk see Jurovich v. Interstate Iron Co. 181 Minn. 588, 233 N. W. 465.

The claim for plaintiff is that Kurtz was repeatedly gassed and that the disease was the cumulative effect of the inhalation of the noxious fumes. The gas was inhaled while Kurtz was working in the furnaces or fire boxes under the ten large steam generating boilers in defendant's power plant.

When Kurtz was first employed there was given to him a copy of defendant's "safety instructions" to employes. He was made to understand, and admitted that he understood, their meaning and purpose. Two of the safety rules were these: ·

"6. Unsafe conditions or practices are to be reported to the foreman.

\* \* \* \* \* \*

"8. All injuries, no matter how slight, must receive immediate attention at the infirmary and report same to your foreman."

█ The boilers about which Kurtz worked were large and of the water-tube type. Each fire box was large enough so that a man could work and move around in it without much difficulty. It was plaintiff's duty to clean the grates as required and replace melted or broken parts. When cleaning or inspection was required the fire was drawn and ample cooling time allowed. The smoke-stack was 135 feet high. Air was led into each fire box under the grates from a large air duct or "wind box" under the floor in front of the boilers. By regulation of dampers and valves in his control, Kurtz was able to admit enough air, as he put it himself, to blow his hat off. In cold weather each fire box could be made too cold for comfortable occupancy. There is no question, therefore, that adequate means of ventilation were available; and if not used efficiently, the primary fault was with Kurtz himself.

With coal, gas was used as auxiliary fuel. It is the claim that Kurtz's injuries, and the disease which finally proved fatal, were the result of repeated gassings to which Kurtz was subjected in his work inside the fire boxes. The gas came to the boilers through an overhead gas main running above and parallel to their fronts. Each boiler was fed by a vertical gas "drop leg" leading downward from the overhead main. In each drop leg were two valves. The upper, a butterfly valve, did not shut off the gas flow but was designed, we take it, automatically to regulate the flow when there was any. Underneath the butterfly valve was a mushroom valve actuated by an outside operating wheel and shaft. The purpose of this valve was to shut off the gas from the adjacent fire box. If in proper condition it would effectually do so. If Kurtz was gassed by an inflow of gas to the fire box, coming through one of these mushroom shut-off valves, it must have been because either they were not properly closed or some defect in valve or valve seat or both prevented complete closing.

Kurtz told about occasions when he resorted to rather violent means to get a mushroom valve effectually closed. But, his testimony goes on in substance, such efforts were sometimes without avail. In spite of all he could do, there were times when gas continued coming into the fire boxes while he was at work. He knew of the danger, knew how it could or should be prevented, but kept on working notwithstanding. Frankly, he admitted on the witness stand that he knew that he was being "gassed" and that he would be "gassed" as long as the noxious inflow continued.

He knew that it was his duty to report any defective appliance, whether likely to result in injury or not. Notwithstanding, he never on any occasion reported to the boiler house foreman or anyone else that a mushroom gas valve could not be closed so as to prevent the gas getting by them into the fire boxes. It is therefore not only evident but conclusively established that the primary negligence resulting in whatever injuries Kurtz suffered, from the presence of gas in the fire boxes, was his own and not that of defendant, his employer.

■ An employe is bound to obey the reasonable rules or orders of his employer. That is particularly true of those promulgated for the safety of the employe himself and his fellows. If disobedience is the proximate cause of injury he is barred of recovery. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6014. See also Unadilla Valley Ry. Co. v. Caldine, 278 U. S. 139, 49 S. Ct. 91, 73 L. ed. 224, and Southern Ry. Co. v. Youngblood, 286 U. S. 313, 52 S. Ct. 518, 76 L. ed. 1124. The obvious and compelling reason of that rule is especially applicable where the defect and resulting danger are obvious and the remedy at hand. The failure of any mushroom valve so to close as entirely to stop the flow of gas was a defect of such dangerous character, particularly as to Kurtz or any other employe having occasion to enter the fire box, that his duty to report it cannot be minimized. Nor can the effect of his own want of care be so reduced as to make room for any fact question either as to his negligence or its proximate and causal connection with the alleged and deplorable result.

Judgment affirmed.

OLSEN, JUSTICE, took no part in the consideration and decision of this case.