## BISHOP et al. v. TEXAS & P. RY. CO.

### No. 4302.

Court of Civil Appeals of Texas. Texarkana.
July 8, 1933.

Rehearing Denied July 11, 1933.

Fred V. Hughes, of Tyler, and N. L. Dalby and Wm. Hodges, both of Texarkana, for appellants.

King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellee.

SELLERS, Justice.

This suit was brought in the district court of Bowie county, Tex., by Mrs. Mary E. Bishop in her individual capacity and in the capacity of administratrix of the estate of her son, Clement W. Moore, deceased, against the Texas & Pacific Railway Company to recover under the Federal Employers' Liability Act (45 USCA §§ 51–59) damages in the sum of $50,000 on account of the death of her son, Clement W. Moore, who met his death on October 30, 1930, while working for said company at Denton, Tex. The plaintiff alleged a great number of acts of negligence on the part of the defendant which it is alleged was the proximate cause of the injury and death of the deceased.

The defendant answered by general demurrer, certain special exceptions, general denial, and assumed risk. At the close of the evidence of both parties, the court gave peremptory instruction to the jury to return a verdict for the defendant, and, from a judgment in accordance with the verdict of the jury, the plaintiff has duly prosecuted this appeal.

We are called upon to determine on this appeal whether under the facts of this case the trial court was authorized as a matter of law to hold: (1) that the deceased was not acting within the scope of his employment at the time he received his fatal injury; (2) that there is no evidence to support any of the acts of negligence alleged; (3) that deceased assumed the risk incident to the work he was performing. The evidence is very voluminous. We have carefully considered all of it, and have concluded that there is satisfactory evidence to prove the following facts: Clement W. Moore, deceased, on October 30, 1930, was about 23 years of age, and weighed about 170 pounds. He had been employed by the Texas & Pacific Railway Company for about two years prior to the time of his death as a helper to assist its electricians in the construction of what is known as an electrical signal system. The system, generally speaking, consisted of a high-power line constructed along and parallel with said railroad from Fort Worth to and through the city of Denton, Tex. From this high-power line was furnished electricity for the operation of lights, signals, signal flashers, and crossing flashers, which were being installed by said company. It appears that the deceased had been engaged in this character of work during all the time he was employed by said company, and during which time he had done at least some of all kinds of work required to be done by its electricians on this job. On the date the deceased was killed, the high-power line had been completed into the city of Denton, and the current had been turned on up to and including a point opposite the railway company's depot in the city of Denton. Just opposite the depot at Denton there had been placed a fifty-foot creosoted pole which had attached to it two ten-foot cross-arms, one near the top of the pole to which was attached four uninsulated electric wires which carried 11,000 volts of electricity. The other was a double cross-arm and was placed about three feet and ten inches below the top arm. Attached to the lower cross-arm was a number of insulated wires carrying a current of 110 volts. From this lower cross-arm there were two wires which led to what is known as a "flasher box" which operated a signal which warned the traffic of the approach of trains to a public crossing a short distance from the depot. There were two other wires attached to the lower cross-arm at the same point the above-mentioned wires were attached which

led to the depot and which formerly had furnished the current from the city of Denton's electric light plant for the lights in the depot, but which were no longer in use; the current for the lights in the depot on the date of Moore's death being furnished from the railway company's own electric system. The railway company had a number of well-established rules for the protection of its employees in working on such places. One of these prohibited employees from working with the high-voltage wires when the current was on. Another one prohibited any of its employees working above the lower cross-arm when the current was on the 11,000-volt wires. The deceased, Moore, was familiar with both of these rules. He knew at the time and before he received the fatal shock that the 11,000-volt current was on the wires of the top cross-arm, and he had been warned of the danger of coming into direct contact with said wires. The pole in question was equipped with spikes in such way as to form a ladder for convenience in climbing the pole to the lower cross-arm.

There is evidence that around every electric wire carrying 11,000 volts of electricity there is what is known as a "static zone," which varies in diameter in accordance with weather conditions, and through which the electricity from the wire might jump or arc to the body of a human being and thereby cause a fatal shock. One may be shocked who gets within the zone even without touching the wire. The electricity arced or leaped to the hand of the deceased, causing his death. There is no evidence that Moore had been told or sufficiently advised of this static current in such a zone by which he might be injured even without touching the wires. There is no evidence that he knew of it, and it is highly inferable that he did not.

On October 30, 1930, a Mr. Alford, who was foreman of the crew in which Moore, the deceased, was working, instructed Moore to go up the pole described and clip the two dead wires leading to the depot, roll them up, and put them with the outfit, meaning the car in which tools were kept. After giving these instructions to Moore, the foreman went down the line to superintend other work. After receiving these instructions, Moore went up the pole to the lower cross-arm, clipped the wires leading to the depot, about six to twelve inches from where they were attached to the end of the lower cross-arm, and in doing so he also clipped the two wires leading to the flasher box which operated the signal at the crossing, and which was in use at the time. After clipping the four wires, Moore came down the pole, rolled up the wires leading to the depot and put them in the car. He then expressed to a fellow employee working some distance away that he had cut the flasher wires through mistake and he was going back up the pole to repair them. He then returned

to the pole and went up it to the lower cross-arm, reached out towards where he had clipped the wires on the first trip up the pole, and then proceeded to climb up on top of the lower cross-arm, and while sitting on the lower cross-arm, reached out with a pair of pliers in his hand towards where he had clipped the wires on the first trip up the pole. And, when his hand was somewhere between even with his head and the point where he had clipped the wires, the electricity from the 11,000-volt wire above jumped or arced to his hand which he was extending toward the point where he had clipped the wires, inflicting what proved to be a fatal shock. Moore did not fall, but his body remained on the lower cross-arm until lowered to the ground by other employees.

We have concluded that the trial court was not authorized as a matter of law under the above facts to say that the deceased was acting without the scope of his employment when he received the fatal injury. It is conceded that the deceased went up the pole the second time for one of two purposes, either to finish the job assigned to him by his foreman by clipping the ends of the wires left by him when he cut the wires going to the depot on the first trip up the pole, or to repair the wires leading to the flasher box which he had cut through mistake. In either event it would seem to us that he was acting within the scope of his employment. In going up the pole to the wires he was in the spot or place which was essential to enable him to discharge his duty and which he was authorized to occupy, and was in the company's employment. He was performing functions assigned to him. He knew how to repair and he knew the importance of the wires leading to the flasher box and the necessity of their being repaired, and with this knowledge he was not required to wait for further instructions from his foreman before proceeding to repair them. 39 C. J. pp. 278, 279, §§ 403 and 404; Doyle v. St. Louis Terminal Co., 326 Mo. 425, 31 S.W.(2d) 1010; Lofty v. Lynch-McDonald Const. Co., 215 Mo. App. 163, 256 S. W. 83. The mere fact that he had no connection with the instrumentality which caused the insecurity of the place or his death will not prevent a recovery and maintaining the action.

We are further convinced that the pleadings and evidence make an issue of fact for the jury to determine as to whether the appellee in sending the deceased up the pole to perform the task assigned in view of his experience was negligent in not sufficiently warning him of the dangers of the static current by which he might be injured without touching the wires, as shown by the evidence to be in static zone surrounding the 11,000-volt wires on the top cross-arm. Dunn et al. v. Cavanaugh (C. C. A.) 185 F. 451; Pennsylvania Utilities Co. v. Brooks (C. C. A.) 229 F. 93.

It is true that the evidence goes to show violation on the part of the deceased of a known rule of appellee by going above the lower cross-arm. That may in the circumstances present a question for the jury of the deceased's negligence proximately contributing to his injury. But such negligence under the Federal Employers' Liability Act (45 USCA §§ 51–59) is not a defense to the cause of action, but would only serve to diminish the damages. Gulf, Colo. & S. F. Ry. Co. v. Locker (Tex. Civ. App.) 264 S. W. 595; Spokane & I. E. Ry. v. Campbell (C. C. A.) 217 F. 518–524, affirmed 241 U. S. 502–504, 36 S. Ct. 683, 60 L. Ed. 1125.

It is also well settled by the authorities that the deceased under the facts of this case cannot be held to have assumed the risk of the static zone and its dangers of which he was unaware. Dunn v. Cavanaugh, supra; Pa. Utilities Co. v. Brooks, supra, and Pacific Power Co. v. Sheaff (C. C. A.) 234 F. 553.

After our close examination of the facts, we have concluded that the many other assignments of error are without merit and should be overruled.

The judgment of the trial court will be reversed and remanded.

## On Appellee's Motion for Rehearing.

### PER CURIAM.

■ Reasons of the court for granting the motion and affirming the judgment are given. The facts in the original opinion are adhered to. The appellee promulgated a rule which prohibited employees from working on or coming in contact with the wires carrying heavy voltage when the electric current was on, and also promulgated another rule which prohibited employees from working above the lower cross-arm of the pole when the electric current was on the wires carrying the heavy voltage. Each rule was promulgated to effect the safety of the employee in his work on the pole. The deceased knew of and was familiar with both rules. He knew the electric current was on and of the danger of touching or coming into direct contact with the wire carrying high voltage. There is no evidence, though, that the deceased knew or had been advised of the danger of being shocked or electrocuted in working above the lower cross-arm of the pole by getting in the zone of statical electricity, even without touching the wire carrying the high voltage. The deceased climbed up on the cross-arm of the pole, and, although not touching the wire of high voltage, was electrocuted by the static electricity surrounding the wire carrying high voltage. The sole question to be determined in the circumstances is, as it seems to us, Was the violation of the rule in evidence necessarily a bar to recovery?

■■ In the original opinion we were inclined to a view, and so held, that disobedience of the rule constituted contributory negligence, which, under the statute, would only serve to diminish the damages, because the injured employee lacked knowledge and needed to be warned of the danger which caused his death, of being electrocuted by getting in the static zone, even without touching the wire carrying the current of 11,000 volts of electricity. That ruling was based upon the theory that the employee may be considered as having some discretion as to his place of work on the pole, and that, unless the employee could be chargeable with notice of the fact that the particular conditions which the rule was framed to meet existed at the time the injury was received, the court would not be justified in declaring him to have been, as a matter of pure law, precluded of any recovery, but should leave it as a question for the jury to determine. Mary Rocco, Ex'x, v. Lehigh Valley Rwy. Co., 288 U. S. 275, 53 S. Ct. 343, 77 L. Ed. 743. But upon a reconsideration of the circumstances proven it is now believed that the present case is distinguishable from the case of Mary Rocco, Ex'x, v. Lehigh Valley R. Co., supra, and the doctrine mentioned may not be held to have application. The rule in evidence is not couched in terms that would permit the employee's act done by him in going above the lower cross-arm of the pole to be tested by the standard of the general law of negligence vel non. He did not by its terms have any discretion which would have permitted him to have been his own judge as to whether he should go above the lower cross-arm of the pole to do his work or perform any task in connection with his work for the employer. The rule here was prohibitory and clearly forbade the employee to go above the lower cross-arm of the pole while the electric current was, as shown continuously to be, on the wires carrying the heavy voltage. His position on the pole was thus fixed by the terms of the rule not to go above the lower cross-arm to work while the electric current was on the heavy voltage wires. And the rule was applicable to and binding upon the employee at the very time and place of work when and where he was injured. There was nothing left open to the employee but the obligation resting upon him, as the contractual relation of employer and employee legally required, to yield obedience to all proper rules and orders. 39 C. J. § 173, p. 132; 3 Labatt, Master and Servant, §§ 1238, 1281; 3 Elliott on Railroads (2d Ed.) § 1282, p. 689. Accordingly, notice or warning of the danger of getting in the existing static zone above the cross-arm on the pole was not a necessary act to be done on the part of the company independently of the rule. Unadilla Valley Rwy. Co. v. Caldine, 278 U. S. 139, 49 S. Ct. 91, 73 L. Ed. 224. It is the settled rule that the company cannot legally be held liable for the death of the employee where disobedience of a rule to prevent being exposed to the peril which killed is the sole producing or

efficient cause of such death. Davis v. Kennedy, 266 U. S. 147, 45 S. Ct. 33; 69 L. Ed. 212; Southern Rwy. Co. v. Youngblood, 286 U. S. 313, 52 S. Ct. 518, 76 L. Ed. 1124; Unadilla Valley Rwy. Co. v. Dibble (C. C. A.) 31 F.(2d) 239; Id., 280 U. S. 565, 50 S. Ct. 25, 74 L. Ed. 618; Bradley v. Rwy. Co. (C. C. A.) 44 F.(2d) 683, 72 A. L. R. 1341.

The former order reversing and remanding the cause is set aside, and judgment is here now entered affirming the judgment of the trial court.

SELLERS, J., absent and not sitting.