AMELIA L. WOLF, as Administratrix, etc., of JOSEPH F. WOLF, Deceased, Respondent, *v.* BALTIMORE AND OHIO RAILROAD COMPANY, Appellant.*

Fourth Department, September 27, 1933.

* Revd., 264 N. Y. 57.

*Mann, Strang, Bodine & Wright* [*William C. Combs* of counsel], for the appellant.

*John Van Voorhis' Sons* [*John Van Voorhis* of counsel], for the respondent.

CROSBY, J.   During an unusually severe snow storm defendant's freight train No. 56 was running northerly on a single-track line. It was being followed by passenger train No. 6.   Near Warsaw, N. Y., those in charge of No. 56 sought to run into a switch so as to let No. 6 pass, as it was known to them that No. 6 was about due at that point.   At the location of the switch the snow was piled so high upon the track that an effort to side track No. 56, at that point, was abandoned, and the train proceeded on for about 2,000 feet toward another switch.   At the point of the first mentioned switch there was a block signal semaphore which, as soon as the engine of No. 56 passed that point, gave warning to the engineer of No. 6 that a train was ahead of him, in the block, and the rules of the railroad required him to proceed, if at all, under control prescribed by rules.   In defiance of the block signal warning, and without observing the rule as to control, the engineer of No. 6, blinded by a snow storm, drove his train, without stopping, past the block signal and into the rear of No. 56 and was killed.   This appeal is from a judgment in favor of his administratrix.

The action is brought under the Federal Employers' Liability Act, so that the comparative negligence rule applies.   The trial court held, and very properly, that plaintiff's intestate was guilty of negligence as a matter of law in passing the block signal, and permitted the jury to find negligence, on the part of defendant, in only one respect, namely, in the failure of the rear flagman of No. 56 to warn the engineer of No. 6 by means of flags, flares and torpedoes, pursuant to a rule of the road known as rule 99.

As to the negligence of the defendant, in the failure of the flagman to do his duty, we cannot say that the jury's finding was against the weight of evidence.

The trial court correctly charged the jury in all respects, but refused defendant's request to have the jury make a special finding on the percentages of negligence contributed by decedent and defendant respectively. While such refusal does not constitute error as a matter of law, we think the better practice is to have the percentages stated by the jury, and we feel that a failure to do that in this case has resulted in a verdict so excessive that we would be called upon to reverse for that reason. However, we do not reverse upon that ground alone as we think the judgment should be reversed and the complaint dismissed on another ground.

Assuming, as we do, defendant's negligence, through the failure of the brakeman of No. 56 to do the things required by rule 99, that amounted to a failure, thus far, to warn decedent of the presence of No. 56 in the block he was about to enter. It constituted no warning of danger, to be sure, but, on the other hand, the absence of torpedoes and flags gave decedent no assurance that he could safely go ahead in the face of the information otherwise conveyed to him by the block signal, for that told him positively, and in no uncertain terms, that another train was in the block, and the block signals were only a mile to a mile and a half apart. Decedent's fireman testified that the flurries of snow made it impossible to see the block signal. For an engineer to pass a stop signal that is not seen is even worse than to pass one that is seen and understood, for, in the latter case, the danger is known, not guessed at, and the known danger is an incentive to extraordinary caution. A rule of the defendant's road deals directly with this subject. Rule 885 provides, in substance, that when a block signal cannot be seen because of fog or storm, trains shall be stopped before passing them, and, if necessary, a fireman or flagman sent ahead to read the signal before 'passing it.

Our case is quite similar to the recent case of *Southern R. Co. v. Hylton* (37 F. [2d] 843). In that case defendant's orders to its engineer, Hylton, were to watch for track construction over a certain section of the road. It was the custom to give engineers, approaching the portion of the road under construction, warning in one of two ways — if a rail was actually out of the track two flagmen would be sent out, one considerably farther than the other, each to warn the conductor of conditions, but if a rail was not actually out, one flagman would be sent out to warn the engineer that conditions required caution but that he might approach with train under proper control. At the time of the accident a rail

was actually removed from the track, yet only one flagman was sent out. He, however, stopped the train and told the engineer that a rail was actually removed from the track. It was held that plaintiff, after derailing his train, could not complain of defendant's failure to observe its rule to give him a second flagman, when he learned from the first flagman all that he could have learned from being further told what he already knew.

*Unadilla Valley R. Co.* v. *Caldine* (278 U. S. 139; 73 L. Ed. 224) is a case where the conductor of a gasoline-driven railroad car, designated as train No. 2, had orders to meet No. 15 at Bridgewater and pass it there. Reaching Bridgewater, and train No. 15 not having arrived, the conductor ordered his inferior, the motorman, to drive on. The conductor was negligent. Negligence of defendant was claimed in two respects: (1) In the conduct of its motorman, who also knew of the order not to pass Bridgewater before meeting and passing No. 15, and (2) in the failure of the station agent at Bridgewater to deliver to the conductor of No. 2 a message from the conductor of No. 15 that he was delayed and was in the block and coming. As to the first charge of negligence, the court said that " he [Caldine] cannot be heard to say that his subordinate ought not to have done what he ordered," and, as to the second, the court said: " The message would only have given him another motive for obeying the rule that he was bound to obey." " A failure to stop a man from doing what he knows that he ought not to do, hardly can be called a cause of his act." (See, also, *Davis* v. *Kennedy*, 266 U. S. 147; 69 L. Ed. 212; *Frese* v. *C., B. & Q. R. R. Co.*, 263 U. S. 1; 68 L. Ed. 1, and *Southern Railway Co.* v. *Youngblood*, 286 U. S. 313; 76 L. Ed. 1124.)

In the case of *Rocco* v. *Lehigh Valley Railroad Co.* (288 U. S. 275; 77 L. Ed. 438) the *Unadilla Valley R. R. Co.*, *Davis*, and *Southern R. Co.* cases are distinguished. In the *Rocco* case a track walker disregarded a rule which required him to inquire of the train dispatcher of the whereabouts of approaching trains in both directions, before starting on his trip of inspection. He was killed by a train rounding a sharp curve without giving the warning required by another rule of the road. It was held that the decedent's negligence, in failing to inquire about trains, was not the sole and primary cause of his death, but only a concurrent cause. The point of distinction between the *Rocco* case and the cases distinguished by it is shown in this language from the opinion in the *Rocco* case: " There is no suggestion that the rule upon which the respondent relies forbade Rocco to start on his inspection trip if he ascertained that the approaching train was within seven or eight miles of Ithaca. * * * If the rule had forbidden him to leave under circumstances such as inquiry

by him would have disclosed, this case would be parallel with those cited."

In our instant case rules Nos. 504, 505 and 506 required decedent to bring his train to a stop at the block signal, and then to proceed, if at all, under restrictions which he made no attempt to obey. Indeed he did not stop at all. Under these circumstances his negligence was the sole proximate cause of his death, and there should be no recovery. The judgment herein should be reversed on the law and facts and the complaint dismissed, with costs.

All concur, Taylor, J., in a separate memorandum, except Sears, P. J., and Thompson, J., who dissent and vote for reversal on the facts and for granting a new trial on the grounds stated in the opinion by Crosby, J., as to the damages. Present — Sears, P. J., Taylor, Edgcomb, Thompson and Crosby, JJ.

Taylor, J. (concurring). *Rocco* v. *Lehigh Valley Railroad Co.* (288 U. S. 275), in which final judgment went for plaintiff, is distinguishable not only in the respect indicated in the quotation made by my brother Crosby from the opinion of Mr. Justice Roberts, but by the fact that there was in that case an approved finding of fact that defendant was proximately negligent subsequent to any negligence of decedent — in that no signal was given of the approach of the train to a curve in the railroad track just before the train collided with the tricycle bearing decedent.

In all the following cases: *Frese* v. *C., B. & Q. R. R. Co.* (263 U. S. 1); *Davis* v. *Kennedy* (266 id. 147), and *Southern Railway Co.* v. *Youngblood* (286 id. 313) final judgments were rendered against plaintiff and the "primary negligence" doctrine was adopted. Still these cases are hardly of sufficient similarity to the instant case in their facts to warrant discussion of them. However, as I read the case of *Unadilla Valley R. Co.* v. *Caldine* (278 U. S. 139), it is an authority for dismissing this complaint under the "primary cause" doctrine. There, as here, claimed causative negligence of defendant through another of its employees preceded decedent's negligence and here, as there, defendant's rules positively required decedent to take precautions which were omitted, resulting in decedent's death. The claimed negligence of defendant was held to be too remote or inconsequential, as compared with that of decedent, to permit the application of the comparative negligence rule. While the primary negligence rule has — as indicated — often been adopted by the highest court in the land, it has received the adverse criticism of at least one reviewer. (See Columbia Law Review, Feb. 1933, p. 373.) The

Circuit Court of Appeals, Second Circuit, in *Miller* v. *Central R. of N. J.* (58 F. [2d] 635, 637), takes the view that this rule should be applied only in cases involving specific precautions for specific occasions or places and not in instances of rules generally enjoining caution (citing the cases hereinbefore cited, and others). Assuming this theory to be sound the rules instantly involved come within the " specific " category. They are surely not less specific in character than was the Illinois statute in the *Frese* case, which required all trains on any railroad in the State to come to a full stop before crossing another railroad.

In view of decedent's long experience as an engineer on defendant's line it can hardly be said that rule 885 did not foreclose him from claiming to be unaware of the location of the semaphore because of the storm and from any right to rely for his safety upon notification of danger otherwise than through the semaphore.

Judgment and order reversed on the law and facts, with costs, and complaint dismissed, with costs.