KEITH v. WHEELING & L. E. RY. CO.
et al.
No. 10360.

Circuit Court of Appeals, Sixth Circuit.
March 31, 1947.

C. Craig Spengenberg, of Cleveland, Ohio (Harrison, Thomas, Spangenberg & Hull and Marvin C. Harrison, all of Cleveland, Ohio, of counsel), for appellant.

George H. P. Lacey, of Cleveland, Ohio (Squire, Sanders & Dempsey, and Charles F. Clarke, Jr. all of Cleveland, Ohio, on the brief), for appellees.

Before HICKS, ALLEN and MARTIN, Circuit Judges.

HICKS, Circuit Judge.

William Keith, a railroad engineer, brought this action, based upon the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., against the Wheeling & Lake Erie Railway Company (herein called Wheeling) and The Pennsylvania Railroad Company (herein called Pennsylvania) for damages for injuries sustained by him in a collision, resulting from alleged negligence of both defendants. The defendants answered separately denying negligence. At the conclusion of the evidence, the District Court directed a verdict for each defendant, on the ground that the engineer's conduct was the sole proximate cause of the accident.

Wheeling, as a part of its railroad system had tracks between Bridgeville, Pennsylvania, and Brewster, Ohio. By agreement between Wheeling and Pennsylvania, either company might "by reason of unforeseen circumstances" detour its trains over the tracks of the other, the "Foreign Company" to use its own engines, engine crews and train crews, but always with a pilot to be furnished by the "Home Company" and subject to all the rules and regulations of the Home Company and the orders of its train dispatcher. The Foreign Company agreed also to hold the Home Company harmless for all loss and damages sustained by reason of such trains being detoured.

On the night of the accident, which occurred about 4:35 A.M., on January 1, 1943, Keith, a Wheeling engineer, and Bush, a Wheeling conductor, were notified to go to Bridgeville and pilot a Pennsylvania train west over the Wheeling tracks to Brewster, Ohio. The engine was No. 7088 and the Pennsylvania crew, including its engineer, fireman, conductor and flagman, remained with the train. On this run, the pilot crew of the westbound No. 7088 received orders at several points, including Sherrodsville, Ohio, where Train Order No. 16 was received, directing that No. 7088 take the west siding at New Cumberland and there meet two eastbound trains. The order was written on a form which had printed at the bottom "Conductor and engineer must each have a copy of this order."

Bush testified that he got a copy of the order, read it, showed it to his flagman, a Pennsylvania employee, and laid it on the desk of the caboose. He did not recall whether the Pennsylvania conductor, who was in the cupola, read it. He further testified that when they went into the siding at New Cumberland, the flagman opened the door of the caboose to throw the switch, and the wind "blew the orders out on the

floor of the caboose"; that after the collision they were found back of the stove.

Keith testified that he received a long-hand carbon copy of train order No. 16 at Sherrodsville, that he understood what the order meant, namely, that he was to meet two trains at New Cumberland. He testified that he read the order and passed it to the Pennsylvania fireman and then to the Pennsylvania engineer; that he himself repeated the orders to the fireman, as required by the rules, and that after they were handed back to him, he put them in his pocket.

Keith also testified that while No. 7088 was on the siding he helped the fireman take down coal because the latter "was played out"; that in the twenty or twenty-five minutes the train was on the siding, he did not leave the train except probably to oil the engine. One eastbound train passed while No. 7088 was still on the siding. The accident occurred when Keith, admittedly forgetting the order and thinking the track was clear, pulled out of the siding and proceeded west about three miles, where No. 7088 collided head-on with the second eastbound train on a curve, somewhat east of the Valley Junction crossing. The injuries for which he sues were sustained in this collision.

In his opening statement counsel for Keith admitted that Keith was negligent in pulling out of the siding contrary to the orders. However, he based his claim for recovery upon the negligence (1) of Bush, the conductor; (2) of the engineer of the train with which he collided; and (3) of Wheeling in failing to provide block signals.

We now examine the record further to determine whether there was evidence tending to show that conductor Bush was negligent.

The record contained the following matter bearing upon the negligence of Bush: Rule 105 of Wheeling stated, "Both conductors and enginemen are responsible for the safety of their trains and, under conditions not provided for by the rules, must take every precaution for their protection." Rule 106 is, "In all cases of doubt or uncertainty the safe course must be taken and no risks run." Rule 247 provided in part, "The general direction and government of

a train from the time of receiving its passengers or freight until it has arrived at destination, is vested in the conductor. He is responsible for its safe and proper movement. * * * In all places and under all circumstances the safety of the train is of first importance, and nothing must be left undone which will secure the same."

There was evidence tending to show that Bush not only lost the order calling for the meeting of two trains at New Cumberland but that during the stay of twenty or twenty-five minutes on the New Cumberland siding, he did not find them, although they were probably on the floor of the caboose the whole time; that he was at least jointly responsible for the train if not in command of it; that he told the Pennsylvania flagman that he did not like pulling out of the siding since he thought two trains were to be met there; that he could himself have stopped the train by applying the air brakes; that having lost his own copy of the order, he could have checked his recollection of the contents of the order with the engineer, in a matter of minutes. He did not do so; but in fact sanctioned the mistaken operation after the train pulled out of the siding. He testified: "We threw the switch and gave him" (the engineer, Keith) "the proceed signal or high ball."

There was evidence tending to show that Keith pulled out of the siding slowly, that after his train was on the main line he proceeded slowly until some member of the crew set the switch for the main line and until he saw the high ball signal, and that he then went ahead. There was evidence that both Bush and the Pennsylvania flagman with him in the caboose could and did see the headlight of what proved to be the oncoming eastbound train, and that Bush could at that time have stopped the train, but did nothing about it.

■ A resume of the evidence clearly indicates that it was sufficient, if submitted to the jury, to sustain a finding of negligence on the part of Bush.

In sustaining the motion for a directed verdict, the District Court based its action upon the admitted negligence of Keith and upon this alone. It said: "It is the holding of this court that the engineer's conduct was the sole proximate cause of the accident and he therefore cannot recover." It

quoted the neatly turned sentence of Justice Holmes in Unadilla Valley R. Co. v. Caldine, 278 U.S. 139, 142, 49 S.Ct. 91, 73 L.Ed. 224, to wit: "A failure to stop a man from doing what he knows that he ought not to do, hardly can be called a cause of his act." The opinion in the Unadilla case cites Davis v. Kennedy, 266 U.S. 147, 45 S. Ct. 33, 69 L.Ed. 212. The Unadilla opinion is based upon the principle of assumption of risk and the Davis case was based upon what is styled the "primary duty rule."

The 1939 amendment to the Federal Employers' Liability Act swept away assumption of risk as a defense. It also did away with the primary duty rule, which was one phase, among others, of assumption of risk. See Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63, 63 S.Ct. 444, 449, 87 L.Ed. 610, 143 A.L.R. 967. In the Tiller case the court said: "Aside from the difficulty of distinguishing between contributory negligence and assumption of risk, many other problems arose. One of these was the application of the 'primary duty rule' in which contributory negligence through violation of a company rule became assumption of risk. Unadilla Valley R. Co. v. Caldine, 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224; Davis v. Kennedy, 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212. Other complications arose from the introduction of 'promise to repair', 'simple tool', and 'peremptory order', concepts into the assumption doctrine. * * * It was this maze of law which Congress swept into discard with the adoption of the 1939 amendment to the Employers' Liability Act, releasing the employee from the burden of assumption of risk by whatever name it was called. The result is an Act which requires cases tried under the Federal Act to be handled as though no doctrine of assumption of risk had ever existed." Thus the Unadilla case and the Davis v. Kennedy case were expressly overruled.

The Federal Employers' Liability Act as amended in 1939, states in part, Title 45 U. S.C.A. § 51: "Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * *, for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or inefficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed * * * or other equipment." (Italics ours.)

This was the statute under consideration in both the Tiller case and this case. In the Tiller case the Supreme Court (318 U.S. at page 65, 63 S.Ct. at page 451) said: "In this situation the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done."

■ Under the authority of the Tiller case, this case should have been submitted to the jury. If it should find under appropriate instructions that the negligence of Keith was the sole proximate cause of his injury, he would not be entitled to recover; but if the jury should find that the negligence of Bush, in whole or in part, was a proximate cause of Keith's injury, he would not be entitled to recover full damages but the damages should be proportioned between him and his employer according to their respective fractions of total negligence. See Norfolk & Western R. Co. v. Earnest, 229 U.S. 114, 122, 33 S.Ct. 654, 57 L.Ed. 1096; N. Y. C. & St. L. R. Co. v. Niebel, 6 Cir., 214 F. 952, 955; Pennsylvania Co. v. Cole, 6 Cir., 214 F. 948, 950.

In addition to the Tiller case, the Supreme Court has in a series of other cases subsequently decided, interpreted the function of the jury in the light of the amended statute. See Bailey v. Central Vermont R. Co., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Tennant v. Peoria & Pekin Union R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740; Jesionowski v. Boston & Maine Railroad, 1947, 67 S.Ct. 401; Ellis v. Union Pac. R. Co., 1947, 67 S.Ct. 598; and the second Tiller case, 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465.

■ We do not review the facts of these cases but it is plain from their examination that the authority of courts by direction of a verdict, to withdraw from the consideration of a jury matter bearing upon the question of the defendant's negligence and its proximate relation to the injury is now very restricted indeed.

■ In explanation of his own conduct, Bush testified that there was a custom on the Wheeling road whereby an engineer might go to the telephone (and this was possible at New Cumberland) while stopped on a siding and receive countermanding orders and pull out; and that the conductor although uninformed· of the change, was accustomed to take a chance and go along even against the rules. Keith flatly denied that there was any such practice. In any event, the credibility of the witnesses is, under the Tennant case, for the jury.

Since the judgment must be reversed, it is unnecessary to consider whether a jury might determine that the eastbound train at the time of the collision was running at a speed in excess of that permitted under the rules.

■ Finally, we think that the District Court was correct in · deciding that there was no implication of negligence in the failure of Wheeling to install an automatic block system prior to the accident. Title 49 U.S.C.A. § 26(b).

The judgment is reversed and the case is remanded to the District Court for a new trial.