**LOUISIANA & ARKANSAS RY. CO.**

v.

**JOHNSON.**

**No. 14970.**

United States Court of Appeals.
Fifth Circuit.

June 30, 1954.

Rehearing Denied July 30, 1954.

M. Truman Woodward, Jr., New Orleans, La., Jos. R. Brown, Kansas City, Mo., Elizabeth R. Haak, New Orleans, La., Milling, Saal, Saunders, Benson & Woodward, New Orleans, La., of counsel, for appellant.

Robert Weinstein, Philip D. Rittenberg, Henry F. Yoder and Fred Bronfin, New Orleans, La., Albert Mintz, of Rittenberg, Weinstein & Bronfin, New Orleans, La., for plaintiff-appellee.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and DAWKINS, District Judge.

RIVES, Circuit Judge.

In an action under the Federal Employer's Liability Act,[1] appellee recovered a judgment on a jury's verdict in the amount of $28,000 for personal injuries suffered in a collision between two of the appellant's trains at a point 1.67 miles north of Lettsworth, Louisiana, on August 10, 1951. Appellee was the rear brakeman on a troop train running northward when it collided head on with a streamlined passenger train traveling southward. The trainmaster who was riding on the northbound train and the other four members of the crew of that train and eight other persons were killed and 69 injured in the collision. Appellee was riding on the rear platform of the last car and jumped just before the impact.

Under the rules of the railroad, the northbound train should have taken a siding so that it would clear the time of the southbound train by at least 10 minutes. The rules further provided that, if the train did not take such siding, the conductor would take immediate action to stop the train, and the firemen, brakemen and other members of the crew would also be held responsible for failure to take immediate action to stop the train. The last siding that the northbound train could have taken so as to clear the time of the southbound train by as much as 10 minutes was at Batchelor, Louisiana, approximately 6.9 miles south of Lettsworth. There was also a switch track at Lettsworth onto which the train might have been moved in time to avoid the accident, but not in time to clear the full 10 minutes pursuant to the rules.

Appellee contended that the collision occurred as a result of the negligence of the trainmaster who was riding on the engine of the northbound train and, according to appellee, had taken over its operations; and, if not from the sole negligence of the trainmaster, then as a result also of the concurring negligence of the engineer and conductor of the northbound train. Appellant asserted as a defense that the appellee was guilty of negligence which was the sole cause of the collision, or in the alternative in diminution of damages that the appellee was guilty of contributory negligence. The appellant also denied that the injuries received by the appellee were serious and claimed that his only injury was a sprained ankle.

On this appeal the appellant complains of the refusal of one of its requested instructions to the jury, that a part of the charge to the jury was erroneous, that the court made erroneous rulings on the evidence, permitted improper argument by appellee's counsel, made erroneous statements prejudicial to the appellee, and in general did not conduct the trial with the air of impartiality to which every litigant is entitled.

The instruction refused read as follows:

> "Where a trainman has a personal duty to perform under the operating rules of the defendant railroad and fails in that duty, as a result of which he is injured, he is not entitled to recover under the Federal Employer's Liability Act, notwith-

---

1. 45 U.S.C.A. §§ 51–59.

standing the fact that it was also the duty of other members of the crew to watch for an approaching train with which his train collided, and that their negligence may have contributed in a proximate way to the injury of the plaintiff."

As requiring the giving of this instruction, appellant cites the cases of Unadilla Valley Ry. Co. v. Caldine, 278 U.S. 139, 49; S.Ct. 91, 73 L.Ed. 224, and Southern Ry. Co. v. Youngblood, 286 U.S. 313, 52 S.Ct. 518, 76 L.Ed. 1124, to which we may add the case of Davis v. Kennedy, 266 U.S. 147, 45 S.Ct. 23, 69 L.Ed. 212. All of these cases were decided before the 1939 amendment to the Federal Employer's Liability Act, now brought forward as 45 U.S.C.A. § 54, did away with the defense of assumption of risk. At that time, the so-called "primary duty rule" was applied to the conductor in Unadilla Valley Ry. Co. v. Caldine, supra, and Southern Ry. Co. v. Youngblood, supra, and to the engineer in Davis v. Kennedy, supra. Following the enactment of the 1939 amendment, the Supreme Court held that "every vestige of the doctrine of assumption of risk was obliterated from the law" and that the " 'primary duty rule' " in Unadilla Valley Ry. Co. v. Caldine, supra, and Davis v. Kennedy, supra, had been "swept into discard". Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 58, 63, 64, 63 S.Ct. 444, 446, 87 L.Ed. 610. Since that decision, in cases arising under the Federal Employer's Liability Act, even the engineer has been held not barred by the "primary duty rule", Atlantic Coast Line R. Co. v. Mangum, 250 Ala. 431, 34 So.2d 848, 852; Atlantic Coast Line R. R. v. Anderson, 200 Ga. 801, 38 S.E.2d 610, see also Keith v. Wheeling & L. E. Ry. Co., 6 Cir., 160 F.2d 654, 657. We hold, therefore, that there was no error on the part of the district court in refusing to give the appellant's requested charge, nor in the part of its oral charge on the same subject; but that, to the contrary, the court probably charged the jury more favorably to the appellant than it was entitled in submitting to the jury the issue of whether the appellee's negligence was the sole proximate cause of the accident.

We have carefully examined the record in this case, and, while it may be that the learned district judge at times showed some impatience or irritation with the claim of a total defense which did not exist in point of law, we are further impressed with his fairness, and we cannot sustain the appellant's contention that its case was prejudiced by any claimed unfair manner in which the trial was conducted. No objection was taken to any of the remarks complained of and we have no further occasion to consider such remarks. Dowell, Inc., v. Jowers, 5 Cir., 182 F.2d 576, 579.

The appellee testified that as the northbound train was going around the curve on which the collision occurred, he was leaning out looking forward on the train for possible "hot boxes" when he noticed the southbound train and the imminence of the collision. Someone had applied the emergency brakes before he could do so. Accordingly, he jumped, did a double somersault and hit the ground. The appellee was between 63 and 64 years of age. His physical injuries at the time did not seem serious and did not prevent his performance of his flagging duties nor his getting back to Lettsworth to notify the dispatcher of the tragic accident. He was, however, hospitalized after the accident and several reputable psychiatrists testified that he had suffered a severe nervous shock, a traumatic neurosis, which in their opinion permanently and totally disabled him and also rendered him nervous, depressed and impotent. The claim that the verdict was for an excessive amount does not present a question for re-examination here. Atlantic Coast Line R. Co. v. Burkett, 5 Cir., 192 F.2d 941, 945, and cases there cited.

Appellant strenuously insists that the court erred in permitting the appellee, over the appellant's objection, to relate his conversation with the conductor, afterward killed in the accident, when the northbound train stopped a few

miles south of Baton Rouge. The train was due to take a siding at Essen, Louisiana, for still another train of the defendant known as No. 9, which was a superior train and had the clearance and right-of-way over the northbound train. Instead, the train passed the siding at Essen and later stopped, at which time Mr. B. T. Moore, the trainmaster, used the radio equipment to contact the appellant's operator at Baton Rouge and to order that No. 9, the superior train, remain in the station until the northbound train had arrived. Over the appellant's objection, the appellee was permitted to testify that he asked the conductor, who was later killed in the accident, why the northbound train did not stop at Essen, and was told by the conductor that the trainmaster was with the engineer at the head of the train, had a radio and was running the train up there, and that they knew what they were doing, but the conductor did not. That conversation, we think, was admissible as circumstantial evidence going to show the method of operation of the train on this fatal journey by the trainmaster. It was really a verbal act relevant to be considered in determining the negligence *vel non* and the degree thereof on the part of the conductor and also on the part of the appellee. VI Wigmore on Evidence, 3d. ed., Sections 1714, 1715, 1788, 1789; Petroleum Carrier Corp. v. Snyder, 5 Cir., 161 F.2d 325; Reading Co. v. Larkin, 3 Cir., 114 F.2d 416.

■ Appellant insists that the district court erred in not admitting appellee's work record kept by the appellant and which showed various infractions of the rules by the appellee during the course of his employment from 1919 to 1951. The appellant contends that the work record is material and relevant to the issue of whether or not the appellee had a preexisting neurotic condition. It would, no doubt, have been proper for the skilled psychiatrists to take that work record into consideration in diagnosing the appellee's condition and the cause thereof, but very clearly, we think, the record without explanatory evidence would have been of no help to the jury. The trial, which consumed five days time, probably would have been extended over several days more in taking evidence as to each of the particular charges, demerits and reprimands shown in this work record. There was no abuse of discretion on the part of the court in excluding it.

■■ Appellant urges that the district court erred in permitting several of the doctors who testified to recite the history that appellee repeated to them. The appellant did not object to such history as given by the first doctor who testified, but did object to its continued repetition. Evidence as to what a patient has told a doctor for the purpose of medical treatment is admissible as an exception to the hearsay rule. United States v. Calvey, 3 Cir., 110 F.2d 327, 330. Such evidence may not be admissible if made by a patient to a physician not for the purpose of treatment but to qualify the physician to testify as an expert witness. Atlantic Coast Line R. Co. v. Dixon, 5 Cir., 207 F.2d 899, 903. The testimony was not, however, objected to on that ground, but the sole complaint was to the repetition of appellee's statements, a matter resting, we think, within the sound discretion of the district judge.

■ Appellant's investigation in preparing its defense included placing the appellee under the surveillance of a detective, who admitted on cross-examination that he tried to induce the appellee to drink alcoholic liquors when the appellee had expressed a preference for soft drinks. There was also evidence that appellant's chief surgeon, at the direction of its vice-president, had reprimanded its division surgeon for giving the appellee a statement to the Railroad Retirement Board that he needed retirement on account of shock and injury to his ankle. Appellee's counsel, in arguing the case to the jury, stated in part: "Now in this case you will note that the plaintiff was dealing with a very, very resourceful defendant; a defendant which in many respects would stop at nothing; a very resourceful defendant." The district court overruled appellant's

objection to this argument. In the part of the argument immediately preceding, counsel for the appellee had commented on the employment and conduct of the private detective and immediately following he commented on the reprimand to the doctor. We cannot say, under the circumstances of this case, that the district court abused its discretion in overruling the objection to this argument. That was the only objection made to the argument which is set out in full in the transcript, and which, as a whole, was a fair though vigorous presentation of the issues. Finding no error in the record, the judgment is

Affirmed.