NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0564n.06

No. 13-6464

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jul 25, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| RICKY EDWARDS, | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CSX TRANSPORTATION, INC., | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant - Appellee. | ) | |

BEFORE: WHITE, DONALD, and O'MALLEY[*],Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** CSX locomotive engineer Ricky Edwards brought this action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, and the Locomotive Inspection Act (LIA), 49 U.S.C. § 20701, after sustaining severe injuries on the job. The Magistrate Judge determined that Edwards's negligence was the sole cause of his injuries and granted CSX's motion for summary judgment. We REVERSE and REMAND for further proceedings.

**I.**

The parties consented to have a magistrate judge (MJ) decide all matters. The MJ's opinion granting CSX's motion sets forth most of the pertinent background:

> On May 28, 2012, . . . [plaintiff] was assigned the task of operating a train consisting of two locomotives and perhaps 30 cars from Bostic, North Carolina to Erwin, Tennessee. When he reported for work, he already was nauseated.

---

[*]The Honorable Kathleen M. O'Malley, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

The lead locomotive, i.e., the one in front from which the engineer operated the train, was No. 823. The train . . . had left Hamlet, North Carolina earlier that day, manned by another crew. It was plaintiff's responsibility, along with the conductor, Mr. McClain, to bring the train from Bostic, North Carolina to Erwin, Tennessee.

Locomotive No. 823 had been inspected the day before as required by 49 CFR § 229.21.[1] That report indicated that the toilet on No. 823 had no defects.

As required by 49 CFR 229.137,[2] railroad locomotives are required to be equipped with a "sanitation compartment," which is nothing but a closet toilet. These toilet compartments are somewhat similar to a portable toilet often seen at outdoor events. Waste is flushed from the toilet with a blue-colored disinfectant liquid, all of which flows into a holding tank which is emptied later. Part 229 of 49 CFR defines "sanitary" and "unsanitary." The definitions are complimentary, and referring to the definition for "unsanitary" will suffice for purposes of this opinion:

> *Unsanitary* means having any condition in which any significant amount of filth, trash, or human waste is present in such a manner that a reasonable person would believe that the condition might constitute a health hazard; or strong, persistent, chemical or human waste odors sufficient to deter use of the facility, or give rise to a reasonable concern with respect to exposure to hazardous fumes. Such conditions include, but are not limited to, a toilet bowl filled with human waste, soiled toilet paper, or other products used in the toilet compartment, that are present due to a defective toilet facility that will not flush or otherwise remove waste; visible human waste residue on the floor or toilet seat that is present due to a toilet that overflowed; an accumulation of soiled paper towels or soiled toilet paper on the floor, toilet facility, or sink; an accumulation of visible dirt or human waste on the floor, toilet facility, or sink; and strong persistent chemical or human waste odors in the compartment.
> § 229.5

---

[1] 49 C.F.R. § 229.21 is titled "Daily inspection" and provides:

    (a) . . . each locomotive in use shall be inspected at least once during each calendar day. A written report of the inspection shall be made. The report shall contain the name of the carrier; the initials and number of the locomotive; the place, date and time of the inspection; a description of the non-complying conditions disclosed by the inspection; and the signature of the employee making the inspection. Except as provided in §§ 229.9, 229.137, and 229.139, any conditions that constitute non-compliance with any requirement of this part shall be repaired before the locomotive is used . . . .

[2] 49 C.F.R. § 229.137 provides in pertinent part: "all lead locomotives in use shall be equipped with a sanitation compartment."

As plaintiff climbed aboard No. 823 to begin his work day, he had to walk by the toilet compartment. The door was open, and he noticed a strong odor of human waste and chemicals. He looked into the compartment and saw that the bowl contained human waste, and the seat and back were splattered with urine and blue chemical. It was so nasty, so he testified during his deposition, that he did not want to flush the toilet without wearing rubber gloves. Other than spraying disinfectant into the compartment, plaintiff did not do anything else, nor did he say anything about the compartment to any other representative of the Railroad.

Plaintiff took his seat in the cab of the locomotive and commenced his run. Approximately half-way to Erwin[, Tennessee], he stopped his train near Poplar, North Carolina to await the passing of another train. While waiting, plaintiff's nausea suddenly grew worse, and he realized he was going to quickly vomit. He got up from his seat and went outside to the catwalk in order to vomit, disdaining the toilet because of its nasty condition. [T]he second time he vomited he pitched over the railing and was badly hurt.

PID 522-24. Additional pertinent background is that Locomotive 823 was inspected at 2:00 p.m. on May 27, 2012, after which the crew that preceded Edwards and McClain took the train from Hamlet to Bostic. The following day, Edwards and McClain reported to the Bostic yard around 10:00 a.m., and the train left Bostic around 12:15. Edwards was struck with the urge to vomit about eight hours into his shift, around 6:00 p.m. on May 28, 2012.

Edwards's accident resulted in an extended hospitalization and his injuries ended his railroad career. On July 3, 2012, CSX trainmaster Buchanan visited Edwards at his home and asked him to complete an "employee report of personal injury while on the job," form PI-1A. Edwards described the incident on the form as follows:

Was sitting on engine and started feeling bad, got up and went outside to throw up. Was standing at hand rail throwing up and that is the last I remember. Fell off the side of the engine hurting my face & back. Don't remember nothing about the fall.

The form asked, "Was anyone at fault?" Edwards checked "yes" and wrote, "CSX bathrm. not cleaned." The form asked, "Did defective tool or equipment cause accident?" Edwards checked "yes" and wrote, "Bathrm. Not usable. Dirty. Reason for being outside." Finally, the form

asked, "Did employee have a safe place in which to work?" Edwards checked "no" and wrote, "Bath rm. was not usable." PID 297. Both Buchanan and Edwards signed the form. Buchanan later testified that his investigation of the accident led him to conclude that Edwards had not violated any rules or regulations.

## II. FELA and LIA

"[A]n avowed departure from the rules of the common law, [FELA] was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work." *Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 329 (1958) (citation omitted). FELA provides that:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death *resulting in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, . . . or other equipment.

45 U.S.C. § 51 (emphasis added). The Supreme Court recently reiterated FELA's lessened negligence and causation standard:

> Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that *employer negligence played any part, even the slightest, in producing the injury* . . . for which damages are sought.

*CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2636 (2011) (citation and quotation marks omitted, emphasis added). So, too, has this court. *See Szekeres v. CSX Transp., Inc.* (*Szekeres II*), 731 F.3d 592, 597 (6th Cir. 2013) ("*McBride* simply reaffirmed *Rogers* [*v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506 (1957),] and the causation standard that has governed FELA cases for over 50 years."); *see also Szekeres I*, 617 F.3d 424, 429 (6th Cir. 2010); *Richards v. Consol. Rail Corp.*, 330 F.3d 428, 437 (6th Cir. 2003) ("*Rogers* [, 352 U.S. at 506,] makes clear that

where the evidence allows more than one outcome on the issue of causation, the issue should be decided by a jury, not a judge").

To supplement FELA and facilitate employee recovery, Congress enacted the LIA (formerly the Boiler Inspection Act), which imposes an absolute duty on railroad carriers to ensure their locomotives are properly maintained and safe to operate. LIA claims are actionable under the FELA, *Szekeres I*, 617 F.3d at 427; that is, LIA does not confer a right of action on injured employees, but rather, has been construed as a supplement to FELA such that proof of a violation under LIA establishes negligence as a matter of law under FELA, *Urie v. Thompson*, 337 U.S. 163, 188 (1949).

> The LIA provides in pertinent part:
>
> A railroad carrier may use or allow to be used a locomotive . . . on its railroad line only when the locomotive . . . and its parts and appurtenances –
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701. A rail carrier can violate the LIA either by breaching the broad duty to keep all parts and appurtenances of its locomotives in proper condition and safe to operate without unnecessary danger of personal injury, or by failing to comply with the regulations issued by the Federal Railroad Administration and promulgated under the LIA. *See* 65 Am. Jur. 2d Railroads § 130, Federal regulation – Locomotive Inspection Act. An employee's contributory negligence does not bar his recovery.[3]

---

[3] *See Szekeres*, 617 F.3d at 427; *Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 188 (6th Cir. 1993) (citing *Urie v. Thompson*, 337 U.S. 163, 188-89 (1949)).

**III.**

During Edwards's deposition, CSX's counsel did not ask Edwards whether he would have used the locomotive's toilet facility had it been sanitary when he became ill. Following discovery, CSX moved for summary judgment, asserting that there was no causal connection between the alleged unsanitary locomotive toilet and Edwards's injuries; that the sole cause of his injuries was "his own bodily maneuver," that is, "falling overboard [from the upper platform of the catwalk after vomiting] on a stationary locomotive"; and that Edwards himself was responsible for the condition of the toilet as a matter of law. In response, Edwards reiterated in an affidavit what he previously stated on the CSX form Buchanan asked him to complete in July 2012:

> As my PI-1A Form shows, the reason I went outside rather than to the indoor toilet compartment of the locomotive on May 28, 2012 was because of the dirty unusable, unsanitary condition of the toilet. I specifically described the condition in my deposition. I would much rather be sick to my stomach and vomiting in a contained inside area where I could safely bend over or get onto my knees or get my rear end onto the floor as one would normally do at home or anywhere else when vomiting. Also, if I became dizzy or was ill for a while, I would be able to sit on the floor or the nearby steps and not have a risk of falling.
>
> As I testified in my deposition, it is true that the feeling of needing to vomit came over me quickly, but I did have time to get to the toilet if it had been sanitary and usable and time to decide not to go to the toilet compartment given its condition that I had seen at the start of my trip and to go out the door behind me instead.
> . . . .
> If the toilet compartment had been sanitary, I would have simply gotten out of my seat, walked quickly down three or four steps and gone to the toilet compartment in order to get on my knees or sit down. The condition of the toilet caused and was the reason for me to go outside instead as I told CSX on my personal injury report form.

PID 294-95.

The MJ concluded that Edwards's own negligence was the sole cause of his injuries:

> The toilet in No. 823 was unsanitary to the point of being nasty, a condition noted by the plaintiff when he reported to work the day of his accident.

He could have requested that the toilet be cleaned; he did not. He could have requested that the two locomotives in his train be switched, so that he would no longer be required to operate No. 823. He could have refused to move the train at all; indeed, the regulations required that he not move the train until the non-complying condition of the toilet had been remedied. Nevertheless, plaintiff chose to keep No. 823 as the lead engine. His failure to either switch locomotives or to keep the engine stationary until the dirty toilet compartment was cleaned constituted negligence as a matter of law since *he* violated a number of the regulations just quoted [49 C.F.R. §§ 229.5, 229.9(a), 229.29, 229.137(c)]**.**

. . . .

He knew about the condition a considerable amount of time before he was overtaken by nausea, and that condition had been allowed to persist because of *his* negligence.

PID 52-29/Dist. Ct. Mem. Op. 10/11/13.

## IV.

We review de novo the MJ's grant of summary judgment, viewing the facts and inferences therefrom in a light most favorable to Edwards. *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 581 (6th Cir. 2007).

The MJ correctly observed that an unsanitary toilet facility constitutes negligence per se under LIA and that an employee's contributory negligence is not a bar to recovery, but improperly applied the law and usurped the jury's function by ruling that Edwards's own negligence was the sole cause of his injuries. First, the MJ read into LIA a notice requirement where none exists.[4] Second, the MJ's determination that Edwards's "failure to either switch locomotives or to keep the engine stationary until the dirty toilet compartment was cleaned constituted negligence as a matter of law since *he* violated several regulations," finds no support in LIA/FELA cases; the MJ cited no authority and CSX provided none on point. The inapposite authority CSX relied upon below included *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 351 (6th Cir.

---

[4] Edwards so argued below. *See* PID 568-69 (Hrg. Tr 10/10/13); PID 427, 431, 446 (CSX Response to Edwards' Statement of Undisputed Facts). CSX admitted below that Edwards violated no safety rules, but argued that Edwards's failure to report the condition of the toilet violated "common sense" and Edwards "certainly violated CSX rules." CSX gave no explanation of what rules Edwards violated. PID 426 (CSX Reply to Pl.'s Resp. to Mo. for Summ. J.); PID 446 (CSX Response to Pl.'s Additional Facts).

2002), modified on other grounds in *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776 (6th Cir. 2003). We held in *Toth* that sufficient evidence warranted the district court's sole-proximate-cause jury instruction:

> We conclude that the defendant introduced sufficient evidence to warrant the sole-proximate-cause instruction. The defense argues, based in part upon plaintiff's conflicting answers during cross-examination**,** that the accident could have resulted from the plaintiff's negligence in improperly gripping the operating lever. GTW also cites safety rules . . . which require an employee to grip the extreme end of an operating lever handle at arm's length. GTW claims that the accident could not have occurred as plaintiff describes if he had been observing this rule.

*Toth*, 306 F.3d at 351 (emphasis added). *Toth* is distinguishable from the instant case because CSX does not claim that Edwards caused the unsanitary toilet condition or that cleaning the toilet was among his job duties, and CSX admitted that Edwards did not violate any safety rules. *See supra* n.4.

More on point are cases addressing the effect an employee's knowledge of the defective condition has on causation; those cases hold that the employee's contributory negligence and the railroad's violation of a regulation are concurring proximate causes. *See Spokane & Inland Empire R. Co. v. Campbell*, 241 U.S. 497, 510 (1916) ("It is too plain for argument that under this legislation the violation of the safety appliance act need not be the sole efficient cause, in order that an action may lie. . . . where, as in this case, plaintiff's contributory negligence and defendant's violation of a provision of the safety appliance are concurring proximate causes, it is plain that the employers' liability act requires the former to be disregarded"); *McCarthy v. Penn. R. Co.*, 156 F.2d 877, 881 (7th Cir. 1946) (disapproving the district court's sole-proximate-cause jury instruction where "there was no evidence of any independent acts of negligence by the decedent that were the sole cause of the accident and his death. . . . This [sole-proximate-cause jury instruction] was bound to confuse and mislead the jury into believing that that concurring

acts of the decedent in continuing to use the defective locomotive after he knew it was defective, and not reporting it**,** might be considered as acts of negligence, for which the decedent might be charged with sole liability for the accident. The giving of such instruction under such circumstances was error."); *Yentzer v. Penn. R. Co.*, 239 F.2d 785 (3d Cir. 1957) (upholding jury verdict in the plaintiff's favor where malfunction in cab signal system caused failure to warn of another train ahead, rejecting the railroad's contention that the plaintiff could not recover because, on observing inconsistent signals, he failed to stop the train in accordance with railroad regulations).

The MJ's determination that Edwards's knowledge of the unsanitary condition of the toilet and his failure to report it barred his recovery was a misapplication of the LIA/FELA; the determination whether the unsanitary toilet played any part in producing Edwards's injuries was for the factfinder.

CSX argued in *Szekeres I*, as it does here, that even if the plaintiff had established a defect with the toilet facility, the causal connection between the alleged defect and his injury was too tenuous to impose absolute liability on CSX. 617 F.3d at 429. This court rejected that argument:

> CSX maintains that although Szekeres could have urinated anywhere in the rural area and admitted that his job duties did not require that he walk up the incline, he chose to walk up a 'real soft' muddy incline to get to a more private area.
>
> On the question of causation, courts 'focus on whether a reasonable jury could conclude that the defective appliance played *any* part, even the slightest, in bringing about the plaintiff's injury.' *Richards*, 330 F.3d at 437 (emphasis in original). Although this is a close question, we conclude that there is a sufficient factual basis for a reasonable jury to conclude that Szekeres's injury 'was within the risk created by' the unsanitary toilet facility. With the toilet facility being 'unusable,' Szekeres had no available indoor facility and was left to relieve himself outside. As . . . Szekeres's expert stated in his affidavit, railroad employees typically 'walk [] up the incline to seek privacy to relieve [themselves]' when other 'toilet facilities are unavailable.' Szekeres testified that

he slipped from accumulated mud on his boots from both the area behind the switch and from climbing the embankment, so there is a direct tie between his inability to use the onboard toilet facility and his accident.

We thus conclude that the district court improperly granted summary judgment on Szekeres's LIA and C.F.R. claim.

*Szekeres I*, 617 F.3d at 430. As in *Szekeres I*, the MJ here usurped the jury's role by ruling on causation as a matter of law: "if as a result of a defective appliance a plaintiff is required to take certain actions and he . . . is injured while taking those actions, the issue of causation generally should be submitted to a jury." 617 F.3d at 429.

As this court observed in *Keith v. Wheeling & L.E. Ry Co.*, "the authority of courts by direction of a verdict, to withdraw from consideration of a jury matter bearing upon the question of the defendant's negligence and its proximate relation to the injury is now very restricted indeed." 160 F.2d 654, 658 (6th Cir. 1947). This is not a case where causation is so attenuated that taking the issue from the jury is warranted.

Admittedly[,] scenarios will arise where the connection between the defective appliance and the plaintiff's injuries become[s] too attenuated to conclude that the defect caused the injury. Take for example the following scenario: a train goes into an emergency stop due to defective air brakes; and an employee, who has exited the train and is standing next to it merely waiting for the brakes to be repaired, is attacked by a rabid dog. Or the same employee waiting for the defect to be repaired decides to stretch his or her legs, goes for a walk, falls, and is injured. A court reasonably could find no causation as a matter of law in these situations.

*Richards*, 330 F.3d at 437 n.5. Here, the unsanitary condition of the toilet facility made it necessary for Edwards to find an alternative accommodation that placed him in greater danger of injury. The MJ improperly determined that Edwards's negligence was the sole proximate cause of his injuries and barred recovery.

For these reasons, we REVERSE the grant of summary judgment to CSX and REMAND for proceedings consistent with this opinion.