RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0109p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RICKY LYNN EDWARDS,

*Plaintiff-Appellant,*

*v.*

No. 15-5385

CSX TRANSPORTATION INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 2:12-cv-00384—Dennis H. Inman, Magistrate Judge.

Argued: April 21, 2016

Decided and Filed: May 6, 2016

Before: SUTTON and GRIFFIN, Circuit Judges; OLIVER, Chief District Judge.[*]

_____

**COUNSEL**

**ARGUED:** John D. Steel, STEEL, MOSS & EBERT, Atlanta, Georgia, for Appellant. Brian D. Netter, MAYER BROWN LLP, Washington, D.C., for Appellee. **ON BRIEF:** John D. Steel, John A. Moss, STEEL, MOSS & EBERT, Atlanta, Georgia, for Appellant. Brian D. Netter, Evan M. Tager, MAYER BROWN LLP, Washington, D.C., John W. Baker, Emily L. Herman-Thompson, BAKER, O'KANE, ATKINS & THOMPSON, Knoxville, Tennessee, for Appellee.

---

[*]The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

1

---

**OPINION**

---

SUTTON, Circuit Judge.   Federal law regulates the bathrooms of trains.   Invoking the relevant statutes and regulations, Ricky Edwards, a train engineer, claims that CSX Transportation owes him damages because an unsanitary locomotive toilet led to a career-ending injury.   The engineer overreads the relevant provisions.   While they require CSX to have such toilets and to clean them once a day, they do not require railroad companies to ensure that the toilets are clean at any given moment between inspections.   Because CSX met the relevant requirements and because Edwards has abandoned any claim that CSX was otherwise negligent in caring for this bathroom, we affirm the district court's rejection of this claim as a matter of law.

I.

Edwards worked as a train engineer for CSX for thirty-one years.   When he arrived at work on May 28, 2012, ready to move a train from Bostic, North Carolina, to Erwin, Tennessee, he had an upset stomach.   What he found on board did not improve matters.   The bathroom in the lead locomotive was "nasty," Edwards saw and smelled.   R. 29-1 at 16.   "[U]rine, human waste, . . . [and] blue chemical" were "splattered" all over the toilet.   *Id.*   There were "[f]eces . . . [i]n the bowl" and dirt on the floor.   *Id.*   Edwards sprayed disinfectant in the lavatory, closed its door, and started the trip.

During a stop that occurred about eighty miles and six hours later, Edwards' nausea escalated.   He felt an urge to vomit.   Unwilling to use a foul bathroom, he sprinted to a catwalk that ran along the outside of the locomotive.   He threw up over the side.   Then he vomited a second time and in the process fell over the handrail onto the ground below.   The fall broke two of his vertebrae and cracked a rib—and ended his career with CSX.

Edwards sought damages under the Federal Employers' Liability Act.   *See* 45 U.S.C. §§ 51–60.   He argued that the pertinent regulations required CSX to keep its locomotive bathroom sanitary.   *See* 49 C.F.R. pt. 229; *see also* 49 U.S.C. § 20701.   Had the toilet not been so

dirty, he claimed, he would have gone there to vomit instead of heading outside to the catwalk and thus never would have fallen.

CSX sought summary judgment, arguing that the link between the dirty toilet and Edwards' injury was too tenuous to establish causation. The district court agreed. Our court reversed, holding that "the determination whether the unsanitary toilet played any part in producing Edwards's injuries [is] for the factfinder." *Edwards v. CSX Transp., Inc.*, 574 F. App'x 614, 620 (6th Cir. 2014).

On remand, CSX sought summary judgment again, arguing that (1) Edwards failed to show that the railroad violated the toilet-cleanliness regulations (a negligence per se theory of liability, 45 U.S.C. § 51; 49 U.S.C. § 20701) and (2) Edwards had abandoned his negligence claim (a general negligence theory of liability, 45 U.S.C. § 51). CSX complied with the rules, it argued, by performing a daily inspection the day before Edwards' injury, when it inspected and cleaned the bathroom. *See* 49 C.F.R. § 229.21. The district court held that CSX complied with the regulations as a matter of law, precluding liability for Edwards' injuries.

II.

A.

The Federal Employers' Liability Act provides the exclusive right of action to "any person," such as Edwards, "suffering injury while he is employed by [an interstate railroad]," such as CSX. 45 U.S.C. § 51; *see N.Y. Cent. R.R. Co. v. Winfield*, 244 U.S. 147, 153–54 (1917). One path of establishing a claim under the Act is negligence—a lack of reasonable care in cleaning the bathroom. *See Urie v. Thompson*, 337 U.S. 163, 173–74, 178 (1949). Edwards has abandoned that route. The other path for establishing a claim under the Act is negligence per se. If Edwards establishes a violation of another federal law, in this instance the Locomotive Inspection Act, 49 U.S.C. § 20701, which regulates the safety of locomotives, he is eligible for relief so long as he can establish causation and damages, 45 U.S.C. § 51; *see Urie*, 337 U.S. at 188–91; *Gowins v. Penn. R.R. Co.*, 299 F.2d 431, 433 (6th Cir. 1962). All that matters at this stage of the case, then, is whether Edwards can show a violation of the Locomotive Inspection Act or its regulations.

In relevant part, the Locomotive Inspection Act says that a railroad company "may use . . . a locomotive . . . only when the locomotive . . . and its parts and appurtenances—(1) are in proper condition and safe to operate without unnecessary danger of personal injury; [and] (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter." 49 U.S.C. § 20701.

Under the regulations promulgated under the Act, railroads have several relevant duties. They must inspect locomotives that are in use at least once a day. 49 C.F.R. § 229.21. During this daily inspection, the railroad surveys the locomotive, makes repairs, and identifies any safety issues. *Id.* § 229.21(a)–(b). Separate regulations govern inspections of bathrooms in "lead locomotives"—those at the front of a train. *Id.* § 229.5. "The sanitation compartment of each lead locomotive in use," they begin, "shall be sanitary." *Id.* § 229.139(a). "All components required . . . shall be present . . . [and] operate as intended." *Id.* § 229.139(b). "Water shall be present in sufficient quantity to permit flushing." *Id.* § 229.139(b)(2). "No blockage [shall be] present that prevents waste from evacuating the bowl." *Id.* § 229.139(b)(4). The railroad may delay fixing some problems, but it must write them down when it first notices the issue. *Id.* § 229.139(d). Cleaning each bathroom, checking that things work, and noting continuing problems thus are all things that happen when a railroad conducts its daily inspection.

A separate section, § 229.137(c), tells railroads what to do if, after a daily inspection, a lead locomotive still has a dirty bathroom. "[I]f the railroad determines during the daily inspection . . . that a locomotive toilet facility is . . . unsanitary," it says, "the railroad shall not use the locomotive in the lead position." *Id.* § 229.137(c). This rule comes with some qualifications. If, for example, the daily inspection takes place where the railroad cannot clean the bathroom, it may use the locomotive until it can solve the problem or until the next daily inspection, "whichever occurs first." *Id.* § 229.137(c)(5).

The Federal Railroad Administration's interpretation of these regulations is consistent with this language. "[T]he duty to remedy an unsanitary condition," the agency explained in the preamble to these rules, "arises only at the daily inspection." 67 Fed. Reg. 16,032, 16,037 (Apr. 4, 2002). "En route failures that occur after the daily inspection impose no burden on the railroad, until the next daily inspection is due." *Id.* at 16,043. A compliance manual makes the

same point, confirming that a railroad meets its duty by cleaning the toilet at the required inspection.  *See* Fed. R.R. Admin., Office of R.R. Safety, Motive Power and Equipment Compliance Manual 8-79 (2012).  These interpretations by the agency are consistent with the regulations, have not changed, and have no markings of litigation gamesmanship.  "When an agency interprets its own regulation," the Supreme Court has told us, we must "defer[] . . . unless that interpretation is plainly erroneous or inconsistent with the regulation" or we see an "indication that [the agency's] current view is a change from prior practice or a *post hoc* justification adopted in response to litigation."  *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013) (quotation omitted); *see Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413– 14 (1945).

Taken together, CSX's regulatory obligations come to this in today's case.  It used engine 823 as a lead locomotive at the front of a train.  At the daily inspection before Edwards' injury, CSX thus had to make the bathroom on engine 823 "sanitary."  49 C.F.R. § 229.139(a); *see id.* § 229.21.  CSX performed this inspection on May 27, sanitized the bathroom, and reported no issues.  That allowed CSX to use engine 823 as a lead locomotive until the next daily inspection became due.  *See id.* § 229.137(c).  Because CSX had to perform this daily inspection once a "calendar day," the May 28 inspection had not become due when Edwards fell at 6:15 p.m.  *Id.* § 229.21.  CSX as a result complied with the regulations, even if the toilet was as dirty as Edwards described it and even if the toilet caused his injuries.

In reaching this conclusion, we note that Edwards does not challenge the validity of the regulations.  And he does not challenge the validity of the agency's interpretation of them. Whether *Seminole Rock* deference is or is not "long for this world" thus makes no difference to this case.  *Bryana Bible v. United Student Aid Funds, Inc.*, 807 F.3d 839, 841 (7th Cir. 2015) (Easterbrook, J., concurring in the denial of rehearing en banc); *see Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1213–25 (2015) (Thomas, J., concurring in the judgment); *Decker*, 133 S. Ct. at 1338–39 (Roberts, C.J., concurring); *id.* at 1339–42 (Scalia, J., concurring in part and dissenting in part).

B.

Attempting to fend off this conclusion, Edwards emphasizes that the key regulation says that the "sanitation compartment of each lead locomotive in use shall be sanitary." 49 C.F.R. § 229.139(a). To his mind, that means bathrooms in lead locomotives must be "sanitary" at each moment that the locomotive is "in use." Bolstering this reading, he adds, is the expansive meaning given to the word "use" in the Locomotive Inspection Act. "A railroad carrier," the Act says, "may use or allow to be used a locomotive" only if it meets the Act's requirements. 49 U.S.C. § 20701. And a locomotive is "in use" almost any time it is not stopped for repair. *See, e.g.*, *Wright v. Ark. & Mo. R.R. Co.*, 574 F.3d 612, 620–22 (8th Cir. 2009); *Angell v. Chesapeake & Ohio Ry. Co.*, 618 F.2d 260, 261–62 (4th Cir. 1980); *see also Brady v. Terminal R.R. Ass'n of St. Louis*, 303 U.S. 10, 13 (1938). All of this, says Edwards, means that if engine 823 was "in use" when he fell, its bathroom had to be sanitary.

But this reads too much into § 229.139(a) and too little into the context in which it appears. Yes, bathrooms of in-use lead locomotives must be "sanitary." But that does not tell us how and when railroads meet that obligation. The rest of the regulations answer that question. A railroad meets the obligation of sanitary bathrooms by making daily inspections of them, just as CSX did. The regulations do not create a violation—negligence per se—any time someone finds a bathroom in an unsanitary condition, no matter the cause, no matter the time of the last inspection. The regulations require a daily inspection, 49 C.F.R. § 229.21, and the section that contains § 229.139(a) speaks only to "servicing requirements," *id.* § 229.139. Otherwise, the regulations would create a 24/7 strict liability duty—one that, as the district court pointed out, would require a full-time bathroom supervisor. Nothing in the regulations suggests such a strict requirement.

Edwards' interpretation also sells other provisions short. We must interpret regulations, no less than other legal texts, "in a way that renders them compatible, not contradictory." *Maracich v. Spears*, 133 S. Ct. 2191, 2205 (2013) (quotation omitted). Section 229.137(c), to repeat, generally prohibits railroads from putting locomotives that have dirty bathrooms after the last daily inspection at the front of a train, but it allows this to happen in specified circumstances. Section 229.139(a), interpreted as Edwards suggests, would prohibit railroads from ever using a

lead locomotive with a dirty bathroom, no exceptions. That interpretation cannot be squared with § 229.137(c), which authorizes some exceptions.

Nor does it help him that a railroad's duties under the Act are "absolute and continuing" and that negligence per se liability may arise without regard to whether the railroad acted reasonably. *Lilly v. Grand Trunk W. R.R. Co.*, 317 U.S. 481, 485 (1943) (quotation omitted); *see also Kernan v. Am. Dredging Co.*, 355 U.S. 426, 430–31 (1958). All these authorities do is take us back to the threshold question: Did CSX violate the regulations? As shown, it did not.

It bears adding that, for employees in Edwards' situation, their only recourse is not negligence per se—establishing a violation of the regulations. They also may establish that the railroad did not use "reasonable care in furnishing its employees with a safe place to work." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 558 (1987). Edwards, however, has abandoned that alternative path to liability here.

Another part of the locomotive regulations, one that does not deal with bathrooms, also fails to support Edwards' argument. Section 229.119(c) requires railroads to keep "[f]loors of cabs, passageways, and compartments . . . free from oil, water, waste, or any obstruction that creates a slipping, tripping or fire hazard." Courts have held under this provision that "[t]he presence" of oil residue on the floor may "violate[] the Locomotive Inspection Act on its face." *Kehdi v. BNSF Ry. Co.*, Civil No. 06-6242-AA, 2007 WL 2994600, at *4 (D. Or. Oct. 11, 2007); *see Reed v. Norfolk S. Ry. Co.*, 312 F. Supp. 2d 924, 928–29 (N.D. Ohio 2004). If a tripping hazard suffices to violate the regulations, reasons Edwards, a dirty bathroom suffices as well. The key problem is that the § 229.119(c) regulations do not parallel the bathroom ones. And above all, they do not come with this guidance: "En route failures that occur after the daily inspection impose no burden on the railroad, until the next daily inspection is due." 67 Fed. Reg. at 16,043.

Edwards also claims that CSX is liable based on prior holdings of this court and of the district court. This court, in the prior appeal in this case and in unrelated litigation, has (correctly) noted that federal regulations require railroads to provide their employees with sanitary locomotive toilets in order to avoid liability. *See Edwards*, 574 F. App'x at 619;

*Szekeres v. CSX Transp., Inc.*, 731 F.3d 592, 599 (6th Cir. 2013); *Szekeres v. CSX Transp., Inc.*, 617 F.3d 424, 427–28 (6th Cir. 2010).  The district court made a similar point.  None of these statements, however, addressed *when* a railroad satisfies that obligation.  That is the question presented today and nothing stands in our way of answering it.  *See, e.g., John B. v. Emkes*, 710 F.3d 394, 403 (6th Cir. 2013); *Yeschick v. Mineta*, 675 F.3d 622, 633 (6th Cir. 2012); *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 597 (6th Cir. 1995).

For these reasons, we affirm.